## SAMUEL VORIS

*v.*

## SOPHIA SLOAN *et al.*

1. TRUST—*when the court may change.* The power of a court of chancery to break in upon the terms of a trust, or change the terms and conditions imposed by the person creating it, exists only in extreme cases, as, when not to exercise the power the property held in trust may be lost or wholly fail to answer the purposes of the trust.

2. DEED—*when remainder vests.* When property is conveyed to a trustee in trust for the benefit of A, and the heirs of her body, forever, and upon the death of the trustee the legal title to vest in A during her natural life, with a remainder to the heirs of her body, and the deed provides that if A should die without issue, the legal title shall revert to the

grantor, it was *held*, that the words "without issue" would not be referred to the period of the death of A, but that the equitable remainder vested upon the birth of any heir to A, subject to be diminished as others should be born.

3. DESCENT—*as to equitable estate held in trust.* When real estate is conveyed to a trustee, to be held by him in trust, solely for the benefit of A, during her natural life, and the remainder to her heirs forever, and there are born to her four children, two of whom die in infancy, without issue, the equitable interest of the two so dying will descend according to our statute of descents, the mother taking, as the sole surviving parent, two shares of the portion each held in the remainder.

4. DECREE—*when the whole fee in land is ordered to be sold, the value of a life estate therein should be fixed.* When land, conveyed to a trustee in trust, for the use and benefit of a mother during her life, and after her death for the benefit of her children, is decreed to be sold, as unproductive, for the support of the mother and her children, the decree should fix the value of the life estate of the mother, instead of requiring the trustee to ascertain and pay her its value, and in fixing such value, the statute, adopting a rule to ascertain the present value of estates of dower, may be taken as furnishing a proper and equitable rule.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

This was a bill in equity, filed by Sophia Sloan and Christiana Sloan, against Samuel Voris. The object of the bill and the facts of the case appear in the opinion of the court.

Mr. H. B. HOPKINS, for the plaintiff in error.

Mr. JULIUS S. STARR, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the 26th day of April, 1850, George Morton conveyed to Francis and Samuel Voris, as trustees, for his daughter, Christiana Morton, in consideration of natural love and affection for his daughter Christiana, and one dollar, the whole of block 103, in Morton, Voris and Laville's addition to the city of Peoria, "to have and to hold the said premises, with the appurtenances, unto the said parties of the second part, or the survivors of them, in trust, for the benefit,

use and behoof solely of the said Christiana Morton and the heirs of her body, forever ; and upon the decease of the said parties of the second part, then the legal title to the said premises is to be and remain in the said Christiana Morton during her natural life, with a remainder to the heirs of her body ; and in case she should die without issue, then, in that case, the legal title to revert to the said party of the first part or his heirs."

At the time this conveyance was made, Christiana was unmarried. The trust was accepted, and Francis Voris died on the first of May, 1852, but Samuel still survives. Christiana, in 1852, married Joseph Sloan, and of the marriage Elizabeth and Sophia were born, and are the only children of the marriage now living, two others having died after her husband. Sophia is eighteen and Elizabeth fourteen years of age. It appears from the bill that Sloan and his family resided in New Orleans ; that he lost his large wealth during the rebellion, and he and his family were thereby reduced to poverty ; that in the year 1861 he died, leaving his wife and children with no means of support ; that Christiana has exhausted all of her means in supporting her children ; that they have no other property ; that this property is vacant and unoccupied, and is unproductive ; that the same can not be rented, because of the uncertain tenure and term for which it could be held, so as thereby to render it productive ; that the yearly taxes on the property are about $200, and that she and her children are unable to pay the same ; that the trustees have advanced $979.74 to pay the taxes, and the trustee is unable to advance more, and the property will be sold for taxes ; that the premises are worth about $5,000 or $6,000 ; that Christiana is the regularly appointed guardian for the children, and is acting as such.

The bill was filed by Mrs. Sloan in her own right, and as guardian of her daughters. Pending the suit Sophia came of age, and, on her application, she became a complainant in her own right. The bill charged the foregoing facts, and

made Samuel Voris a defendant. He answered the bill, and admitted the facts to be true.

On a hearing, the circuit court found that the title to the premises was a life estate in Christiana Sloan, with a remainder in fee in Sophia and Elizabeth Sloan ; that the premises would sell for a better price if the title of all of the owners should be sold together, and that Christiana consented that the sale be so made. The court, according to the prayer of the bill, decreed the sale at auction, and ordered the trustee to sell the premises entire or in subdivisions, so as to obtain the best price, after giving twenty days' notice, one-third of the purchase money to be in cash, the balance in equal instalments at one and two years ; that of the proceeds of the sale, Christiana receive the value of her life estate in the premises, and the residue be paid to her as guardian of her children ; but the value of the life estate is not fixed by the court. It further directs that the trustee retain $979.74, for taxes advanced by him and never refunded.

We have received no aid from the brief of counsel for plaintiff in error, as he only assigns the error that the court should not have granted the relief sought, and refers us to no authority, nor does he urge any reason why the decree should be reversed. We shall, therefore, discuss such questions as are suggested by counsel for defendant in error, or as have occurred to us. The first question, and that which lies at the threshold, is, whether the court has power to break in upon the terms of a trust, and to pervert or change the terms and conditions imposed by the creator of the trust. In the case of *Curtis* v. *Brown*, 28 Ill. 201, after a review of the authorities, it was determined, that the power might be exercised in extreme cases. A case was there instanced where the property might be unproductive, and where the *cestui que trust* was absolutely perishing from want, or was forced to the poor house, or where the trustee could not possibly raise the means to pay the taxes on the property, and thus save it from a public sale, when the court of chancery would interpose its

powers. Thus, it is seen, that it is only in cases of the most urgent necessity that the terms of the trust will be changed, and the fund applied to other or different uses from those fixed in the trust deed.

From the evidence, it appears that the mother and daughters have no means with which to support themselves, or to pay the taxes that are accruing and annually increasing on the property. This is the testimony of Mrs. Sloan, and there is nothing to contradict it in the record. Some of the witnesses, and one of them the trustee, swear that all reasonable efforts have been made to lease the property, but without success, not even being able to do so for enough to pay the taxes. And they fix its value at $5,000 or $6,000. We think this is a case justifying the interposition of the court, as otherwise the property would probably be lost before the minors would come of age, even if they could then sell and pass the title.

The language employed in declaring the trust is not free from doubt. The expression, "and in case she should die without issue, then, in that case, the legal title to revert to the said party of the first part, or his heirs," is uncertain. The ambiguity arises and the difficulty presented is, whether the grantor intended that the remainder should vest on the birth of children of her body, or whether it was suspended until the death of Mrs. Sloan.

Had the deed contained no limitation over to the grantor or his heirs, then it is manifest that, by the statute *de donis*, the heirs of her body would have taken an estate tail, but as entails have been abolished by our conveyance act, they would at birth have taken a fee. *Butler* v. *Heustis, post,* p. 594. But does the limitation over, and the language "should she die without issue," produce a different result? This depends upon whether the language shall be construed to mean, without having had issue. If that is the true construction, then, upon the birth of a child, or children of her body, the contingency was fulfilled, and the fee vested in them and the

limitation over was defeated. If, on the other hand, this language means that if she died leaving no issue surviving her, the contingency remains open, and the title has not vested in the children, and can not until the death of their mother, and they, or one of them, shall then survive her.

In the case of *Barlow* v. *Salter*, 17 Ves. 479, Sir William Grant, Master of the Rolls, in construing a devise with a limitation over, in these words, "in case she dies without issue," said that it was necessary to decide the meaning of these words, whether they are to be construed without issue generally, or at the time of the daughter's death. He said that "it appears in some of the earlier cases that the judges inclined to hold these words to mean without issue at the death of the person named; but ever since the case of *Beaucherkep* v. *Doxmer*, 2 Atk. 308, I think a different rule has prevailed; and it is now settled, that, unless there are expressions or circumstances from which it can be collected that these words are used in a more restricted sense, they are to have their legal signification, namely, death without issue, generally." The language in that devise, and in this deed, are essentially the same, and no distinction can be justly taken between them. The same rule of construction must govern in both cases.

If we examine all of the language employed, we find nothing in this case to restrict the legal signification as determined in those English decisions. The property is declared to be "in trust for the benefit, use and behoof solely of the said Christiana Morton and the heirs of her body, forever." And in case the trustees should die, it is further declared that she shall hold the premises during her natural life, with a remainder to the heirs of her body. We can perceive nothing in this language implying any intention to restrict the vesting of the title to the heirs she might leave at her death, but to vest the title in the heirs of her body generally. It, then, follows that, under this declaration of the trust, Mrs. Sloan took, and there vested in her, an uncon-

ditional life estate, and the remainder vested in the heirs of her body at their birth, each taking a share, subject to be diminished as others should be born.

It, then, further follows, that, as each child at birth took an equitable fee in the premises, on the death of the two whom Sophia and Elizabeth survive, their heirs inherited their shares in the proportions and in the manner prescribed by our statute of descents. Under that statute, the mother inherited from each, at its death, two shares in the portion it held in fee. This being the case, the decree of the court below is, in this respect, erroneous, inasmuch as it only allows the mother payment out of the sale for the present value of her life estate. And it was proper that the court should find its value, and not embarrass the trustee by requiring him to ascertain and pay her its value. And, in fixing its value, as fair and equitable a rule as can be adopted is that provided by our statute to ascertain the present value of estates of dower in lands.

The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*