WILLIAM PENNINGTON et al., executors of Jacob S. Rogers, deceased,

*v.*

THE METROPOLITAN MUSEUM OF ART et al.

[Filed July 14th, 1903.]

1. By the will of Jacob S. Rogers, deceased, testator created a trust fund, consisting of both real and personal estate, and provided that the income therefrom should be applied, (1) to the payment of all taxes and assessments and other impositions upon the trust fund; (2) to pay to each of two infants $500 annually, as long as he should live; (3) to use and apply the remainder in improvements upon the real estate in the trust, and (4) any balance of the income not so used was to go to the Metropolitan Museum of Art in the city of New York. The trustees were empowered to lease the real estate in the trust for terms not exceeding fifteen years. Upon the death of the longest liver of the two infants, it is provided that the whole trust fund shall go to the Metropolitan Museum.

2. The Metropolitan Museum, having applied to the trustees of the fund for immediate possession of the real estate in the trust, undertaking to thereafter relieve the trustees from the payment of any taxes, assessments or impositions thereon, the trustees filed their bill for instructions and directions respecting their conduct in the management of the trust.

3. By the proofs it appears that the present income of the whole fund is insufficient to discharge the annual taxes now imposed on the real estate in the fund, and that there is no reason to anticipate that the income will hereafter become sufficient to pay the taxes, assessments and other impositions thereon.—*Held*, (1) that if testator did not anticipate and provide for the case of the income being exhausted in the payment of the impositions upon the real estate, and if, by a change of the scheme for the management of the trust, the benefit intended for the infant beneficiaries and the residuary beneficiary may be carried out, with the consent of the latter, this court has power to direct and instruct the trustees to so change the scheme of the trust as to effectuate the testator's intention; (2) that the power to direct such change of scheme is grounded on the necessity of such a change to effectuate testator's intention, which, under the present circumstances, cannot be carried out; (3) that the court will not refrain from exercising its power in that regard because two of the beneficiaries are infants, or because objections are made in behalf of one of the infants, if it is convinced that such change is for the benefit of the infants, and their interests can be effectually secured to them.

4. The trust in question was created and its scheme of management prescribed by the first codicil of testator's will, the terms of which justify the inference that testator contemplated that the income from the trust fund would suffice to pay the taxes, assessments and other impositions, and also the annual sums to the infant beneficiaries. By a subsequent codicil, testator provided that if at any time the income should not be sufficient to discharge the taxes and assessments, the deficiency should be paid by the residuary beneficiary, out of the income from other property bequeathed to it by the will.—*Held*, (4) that by the true construction of this provision, the testator therein provided for the case of assessments for municipal improvements imposed casually and from time to time, and which at times might, when added to the annual taxes, exhaust the income of the fund, and did not have in contemplation or provide for the case of annual taxes exhausting the income and constantly depriving the infant beneficiaries of the benefit intended for them.

On bill for relief respecting the trust arising under the will and codicils of Jacob S. Rogers, deceased, and for instructions and directions to the trustees thereof.

The following extracts from said will and codcils show the trust in question:

WILL OF JACOB S. ROGERS.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"*Sixteenth*. All the rest, residue and remainder of my estate real and personal of every nature and kind and wherever situate, I give, devise and bequeath to my brother Columbus B. Rogers and my friend Asabel S. Levy my Executors hereinafter named and appointed. To have and to

Pennington *v.* Metropolitan Museum of Art.

hold unto them their successors and assigns forever, with full power to receive the rents, issues and profits thereof, In Trust nevertheless to sell and convey and convert the said real and personal estate into money, or available securities, and I order and direct them to sell convey and convert the same into money or available securities, as soon as it can be done, having in view the best interest of the estate, and thereupon, without delay, to pay over the proceeds thereof, and the rents, income, issues and profits thereof to The Metropolitan Museum of Art in the City of New York, a corporation constituted and created by Chapter 197 of the laws of 1870 of the State of New York, for the use and purpose of forming an Endowment Fund for the said Museum, or of adding to and enlarging the Endowment Fund of said Corporation, if such a fund now exists, or shall be in existence at the time of my death; the income only of the fund hereby created, or intended so to be, to be used for the purchase of rare and desirable art objects and in the purchase of books for the library of said Museum, and for such purposes exclusively, the principal of said fund is not to be used, diminished or impaired for any purpose whatever."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

FIRST CODICIL.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"*Second.* I except and exclude from the rest, residue and remainder of my real and personal estate given and devised by my said will and testament all my real estate in the City of New York and in the State of New Jersey, and also all of the stock of the Paterson and Hudson River Railroad Company and of the Paterson and Ramapo Railroad Company which I may own or be entitled to at the time of my death. And I give, devise, and bequeath the same to Asahel S. Levy and Jenkins Van Schaick, both of the City of New York for and during the lives of Thomas B. Bradford and of Theodore B. Rogers, Jr., grandsons of my deceased brother Theodore Rogers, and for and during the life of the longest liver of said Thomas B. Bradford and Theodore B. Rogers, Jr., In Trust nevertheless to collect and receive the rents, income, issues, dividends, interest and profits thereof and to apply and pay the same as follows

"*1st.* To the payment of all taxes, assessments, insurances. alterations, repairs and other charges which may be or come against said real and personal estate, or which may be necessary for the proper care and preservation thereof.

"*2nd.* To apply to the use of each of the said persons above named viz.: Thomas B. Bradford and Theodore B. Rogers Jr. Five Hundred dollars annually so long as he may live.

"*3rd.* The remainder of said rent and income if any, shall be used and applied to the improvement and permanent benefit of the real estate given and devised in trust by this codicil.

"*4th.* If there shall still remain a balance of said rent and income, I give and bequeath the same to The Metropolitan Museum of Art in the City of New York, for the purpose of forming or increasing an Endowment Fund of said Corporation, as I have in said will and testament provided.

"My executors and trustees shall have and I hereby give them power to -

Pennington *v.* Metropolitan Museum of Art.

lease and let the said real estate for terms of not more than fifteen years at any one letting or leasing, and for such rents and upon such terms, covenants, agreements and conditions as to them may seem just and proper."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"*Fourth.* Upon the death of the longest liver of said two named persons viz. Thomas B. Bradford and Theodore B. Rogers Jr. I order and direct the said Trustees to sell and convert into money all of said real estate devised in trust in this codicil, and I give and bequeath the proceeds arising from said sale and conversion, and the two above mentioned Railroad stocks, together with any accumulations of the income from said properties, to the Metropolitan Museum of Art in the City of New York, in my said will and testament mentioned, for the same uses and purposes and subject to the same conditions and limitations which are contained in the sixteenth and seventeenth clauses of my said will and testament, and as are therein prescribed and applied to the gift devise and bequest of the rest, residue and remainder of my real and personal estate, and the provisions I have made in the event of the failure or invalidity of the devise and bequest of said rest, residue and remainder or any part thereof, and the disposition to be made of the same, shall apply to and include my said real estate and the two stocks above mentioned and hereby excluded from and taken out of said rest, residue and remainder and hereby intended to be devised and bequeathed.

If however, at the time this instrument shall go into effect, the said Metropolitan Museum of Art in the City of New York, shall be authorized to take the land in question by devise, a sale of said real estate shall not be necessary, but the same shall upon the expiration of the trust term hereby created, vest in possession in said Corporation to which in that event I give and devise the same, and it shall not be necessary to sell and convert the remainder of the rest, residue and remainder of my real estate into money as provided in my said will if at the time of my death the said Metropolitan Museum of Art shall be authorized to take it by devise, and in that event I give and devise the same to that corporation absolutely."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

SECOND CODICIL.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"*Third.* If at any time it shall happen that the income from the real and personal estate given and devised in trust by the second clause or paragraph of the said first codicil to my said last will and testament shall be insufficient to pay and discharge the taxes and assessments which are or may be levied and imposed upon said real and personal estate such deficiency shall be made up and paid and supplied out of the income of the estate real and personal given, devised and bequeathed to the Metropolitan Museum of Art by my said last will and testament, or out of the income from the fund which may arise from the sale and conversion of said real and personal estate ordered and directed by said last will and testament."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Pennington *v.* Metropolitan Museum of Art.

#### FOURTH CODICIL.

\*        \*        \*        \*        \*        \*        \*        \*

"As Thomas B. Bradford mentioned in a former codicil as one of the parties during whose life a certain Trust is to last has since died; I hereby nominate and appoint to take his place in all things William Du Pont, grandson of my deceased brother Theodore Rogers.    And I hereby declare William Pennington, Theodore B. Rogers and Judge John S. Barkalow are the executors and trustees of and under my said last will and testament and the codicils thereto."

*Mr. John R. Beam* and *Mr. John W. Griggs,* for the complainants.

*Mr. George Holmes* (with whom was *Mr. Robert De Forest* and *Mr. Robert Thorne,* of the New York bar), for the Metropolitan Museum of Art.

*Mr. Alan H. Strong,* for William Du Pont, Jr., and William Du Pont, his guardian *ad litem.*

MAGIE, CHANCELLOR.

Complainants are the executors of Jacob S. Rogers, deceased, and hold, as trustees, the personal and real property withdrawn and excluded from the residuary disposition made by the sixteenth clause of the will of the testator, and created a trust fund by the provisions of the second clause of the first codicil to said will.    Their bill seeks specific relief respecting the disposition and management of the trust fund, and it contains a prayer for general relief.

The defendants are the Metropolitan Museum of Art, a corporation of the city of New York; Theodore B. Rogers, Jr.; William Du Pont, Jr., and William Du Pont, guardian of William Du Pont, Jr.

The Metropolitan Museum of Art has filed an answer, admitting the charges of the bill, and join in one of the prayers for specific relief contained therein.

An answer to the bill by the defendant Theodore B. Rogers, Jr., who is an infant, has been filed by Theodore B. Rogers, his

guardian, submitting to the direction of the court, and praying for protection of the infant's interest.

An answer has also been filed by William Du Pont, Jr., who is an infant, by William Du Pont, his guardian *ad litem,* and by said William Du Pont as general guardian of said infant.

By that answer no contest is presented in respect to the facts charged in the bill, but it is submitted thereby that no such specific relief as is prayed for in the bill can be decreed, except on consent of said infant, which consent is thereby expressly refused.

The cause has been brought to hearing upon the bill, answers and proofs.

The proofs establish the following facts:

The stocks of the Paterson and Hudson River Railroad Company, and of the Paterson and Ramapo Railroad Company, which are included in the trust fund in question, are producing an annual income of $13,676. The real estate in the city of New York included in the trust is, in part, unimproved, producing no income; the remaining part is a lot with a building, which has been unoccupied for several years past, and which needs considerable repairs to enable a rental to be obtained for it. The taxes imposed on that property for the year 1902 were $6,021.49. In the opinion of a witness the two tracts are worth $362,000. The real estate in the State of New Jersey in the trust, among other things, includes land in the city of Paterson, viz., a considerable tract of unimproved land and the late residence of the testator. All the real estate in the city of Paterson was assessed for taxes, for the year 1902, at a valuation of $412,790.40. One of the executors testified that he and his co-executors consider this valuation to be excessive, and have appealed therefrom to the state board of taxation. The witness, however, admits that the lands in that city have a valuation of over $200,000. The annual taxes imposed on that property, at the valuation of the taxing office for the year 1902, were $10,310.76. There are, besides, large assessments upon that property, imposed for street improvements (to an amount not disclosed by the proofs), which have not been paid. The same witness expresses an opinion that the whole Paterson real estate

cannot be made to yield an annual income of more than $600. There is also included in the trust in question some land situated at, and in the vicinity of, Pompton, New Jersey. The same witness expresses the opinion that that property cannot be made to produce more than $400 a year. What annual taxes are imposed thereon is not disclosed by the proofs.

From the facts established by the proofs the following inferences may be fairly drawn: (1) That the present income of the trust is now insufficient to discharge the annual taxes imposed upon the property and directed to be first paid out of the income, by the first subdivision of the second clause of the first codicil; (2) that there is no reasonable probability that in the future the fund will produce sufficient income to discharge such annual impositions, because there will be no income to apply to improvements, under the third subdivision of the second clause of the codicil, and therefore no increase produced from the fund, and because the limitation of the power to rent the property to fifteen-year terms will prevent the unimproved land being let upon building leases, which might increase the income.

It results that, at present, the fund can produce nothing to satisfy the annual payments directed to be made to the two infants, and there is no reasonable likelihood that it will be able to make such payments in the future. The deficiency required to be met by the Metropolitan Museum of Art, under the third clause of the second codicil, now exists, and is likely to continue to exist and to be increased by the increase of taxation, and especially by assessments for municipal improvements in Paterson. If the trustees could be relieved from the burdens arising from the requirement to pay the impositions on the real estate included in the trust, the income from the stocks included therein would not only suffice to pay the annual legacies to the infants, but would leave a large surplus.

The contention made by the guardian *ad litem* of the infant Du Pont, one of the beneficiaries under the trust, ought to be first considered. That contention is that notwithstanding the trustees are unable, in the present condition of the trust fund, to make any payment upon the annual legacy to that infant, and that the fund is so limited by the terms of the trust that there

is no reasonable probability—indeed no possibility—that any such payment can be made hereafter, yet none of the relief sought by this bill can be granted without the consent of that infant. As the infant is not *sui juris,* he is, of course, incapable of giving a consent upon which the action of the court in making a decree under this bill could be supported. The guardian *ad litem* has no power either to give or to withhold such a consent. But a court of equity is not hampered in the administration of relief in a proper case by the inability of an infant to give consent to its action. Thus, where an infant, if adult, would be bound to make an election, the court may defer the question of election until he becomes of age, if it can be done without prejudice to the rights of other parties, but will ordinarily make inquiry whether it is to the infant's interest to elect, and what election should be made, and will thereon make an election in the infant's behalf. *Pom. Eq. Jur. § 509; Streatfield* v. *Streatfield, 1 White & T. Lead. Cas. 397* and *notes.*

If in the case before us consent is necessary and can be given by the court in the infant's behalf, it would seem to be inequitable to stay the hand of the court until this infant becomes of age, because the long delay will not only injure the infant objecting, but the other infant beneficiary who submits himself to the judgment of the court, and would also operate injuriously upon the residuary beneficiary.

Upon the pleadings and proofs, I deem it my duty to determine (1) whether this court is possessed of power to grant the specific relief prayed for, or any part of it, or any germane relief under the prayer of the bill; and (2) whether, if the court possess such power, it should refrain from exercising it because of the infancy of two of the beneficiaries under this trust.

Before addressing myself to these inquiries, it is proper to state that the interests of the infant beneficiaries are not correctly called annuities. An annuity arises upon the grant of a yearly sum, with the payment of which the grantor has charged himself and would have been liable at the common law to a writ of annuity. *Co. Litt. 144b.* Here is no bequest of an annual sum, under which the executors might be required to set aside a fund sufficient to raise such sum. The infants' interests are

created and fixed by the terms of the trust. They are not entitled to a fixed annual sum at all events, but only to an annual sum if the income of the fund in each year permits. Therefore, if in any year the income does not suffice to pay the whole or any part of the annual sum, the trustees are without power to make up the deficiency out of the subsequent income. Nor can there be the least pretence that the annual sums are charged upon the principal of the trust fund. *Baker* v. *Baker, 6 H. L. C. 616; Wharton* v. *Masterson, L. R. App. Cas. (1895) 186.* Continued deficiency of income to pay the annual sums will therefore result in a total loss to the infants of the benefit which testator intended them to receive.

If the interests of the infants under this trust were strictly annuities, the case would fall within the line of English cases in which the court of chancery has required the annuity to be secured, and after security given, has disposed of the residue. Thus in *Slanning* v. *Style, 3 P. Wms. 335,* upon a will bequeathing an annuity to testator's wife and charging it upon the personal estate, Lord Talbot decreed the executors to bring into court sufficient of the bonds and securities of the estate to answer the annuity. *In re Parry, L. R. 42 Ch. Div. 570,* North, J., upon a will bequeathing annuities and then bequeathing the residue of testator's property, after payment of the annuities, held that while the annuitant would not be entitled to have the estate converted and a sum sufficient to answer the annuities invested, they were entitled to have the annuities sufficiently secured, and he decreed that such security should be given by a first mortgage on certain real estate of the testator which was part of the residue, and when so secured, that the rest of the income of the estate should be divided among the residuary legatees.

A like doctrine has been applied in a well-considered case in New Hampshire. *Healey* v. *Tappan, 45 N. H. 243.*

With respect to annuities so secured, the court of chancery has, when the income has proved to be insufficient to satisfy the annual payment, required the deficiency to be made up from the subsequent income or even from the principal. *May* v. *Bennett,*

*1 Russ. 370; Boyd* v. *Buckle, 10 Sim. 595; Booth* v. *Coulton, L. R. 5 Ch. App. 684; Baker* v. *Baker, ubi supra.*

But the case under consideration is distinguished from those cases because, as before stated, the infants are not annuitants. Their interest is confined to a share of the income to be paid annually, if the income extends so far. If the income does not suffice for any annual payment, the deficiency does not fall upon any subsequent income or the principal of the fund. The residuary legatee is therefore in no respect concerned in that deficiency. It cannot be required to give security that the income shall be sufficient, and is under no liability if the income never becomes sufficient.

The solution of the problem presented in this case must be found in the application of other principles.

Complainants are trustees of a fund of great value. They exhibit and prove a situation in which the fund does not now serve the evident purpose of its creator, in respect, at least, to his infant beneficiaries. They show that there is no reasonable probability that the situation will improve in the future. It is not too much to say that, in view of the possible and probable increase of municipal impositions, by way of taxes and assessments, there is no reasonable expectation of an improved situation. Under such circumstances they apply to this court for directions as to their duty. They invoke the action of the court under its well-settled jurisdiction to construe wills and trusts, and to aid executors and trustees by instructions and directions where necessary and proper.

The trustees bring this matter to the attention of the court upon the demand of the residuary legatee, the ultimate beneficiary of testator's bounty under the trust. If complainants yield to this demand, it is evident they will themselves be liable to a charge of a breach of trust. For it is impossible to deny that the course of action requested by the defendant the Metropolitan Museum of Art is not in accord with the apparent intent of the testator expressed in the language set out in the prefatory statement. That language clearly indicates that testator's intent was that the whole fund, real and personal, should be kept intact in the trust as long as the longest liver of the two infants should

survive. What this defendant seeks is that, notwithstanding this intent, the real estate may now, at once, be released from the trust and given to it in immediate possession. As it must be conceded that the defendant has, under the terms of the trust, a present vested interest in the whole fund, this course will only accelerate the purpose intended, and put the residuary beneficiary in a possession to which it must ultimately come. But it must also be conceded that this course will alter the scheme of the trust as devised by the testator.

It is not easy to determine what motive actuated the testator to include in this trust both real and personal property, which must have been of great value at the time he executed the will and codicil, and which is now worth over half a million dollars, and also to include therein real estate which is unimproved and in a condition which, under the terms of the trust, precludes the possibility of improvement, and of any income therefrom. It is clear that his sole purpose could not have been to secure the annual payment of the comparatively paltry sums given to the two infants. His purpose must have had a broader scope. In my judgment he contemplated that the income from the personal estate and such of the real estate as produced income would always be sufficient to satisfy the primary charges imposed thereon by the first subdivision of the second clause of the first codicil and the annual sums to the two infants directed to be paid by the second subdivision of the same codicil, and that his motive may be inferred to have been to keep the unimproved and non-income-producing real estate in the trust until its termination, when the ultimate beneficiary would receive it, with the benefit of what has been called the unearned increment.

The residuary beneficiary supports its demand upon the trustees upon the doctrine of a line of cases in the English court of chancery. That doctrine is that, when an interest under a will is vested in one who is, or becomes, *sui juris*, the court will, upon his demand, put him in immediate possession thereof, notwithstanding the testator postponed his possession to a later period, if it clearly appears that no other person is interested in the property which will be affected thereby. This doctrine seems firmly established in those courts, the leading case of

*Saunders* v. *Vautier, Craig & P. 243,* in which it was first enunciated, having been repeatedly followed and approved. *Gosling* v. *Gosling, 1 Johns. Ch. 265; In re Colson's Will, Kay 133; Coventry* v. *Coventry, 2 Drewry & S. 470; Josselyn* v. *Josselyn, 9 Sim. 63; Rocke* v. *Rocke, 9 Bevan 66; In re Jacobs' Will, 29 Bevan 402; Wharton* v. *Masterson, ubi supra.*

If the relief sought for in this case depended upon the application of the doctrine of those cases, I should find serious difficulty in granting it. The infant beneficiaries have an interest in the trust fund during their joint lives, and the survivor of them has such an interest as long as he shall survive. If, under the circumstances disclosed, the interest of the infant beneficiaries may be ignored, the doctrine seems to me, at present, to be in opposition to the rule requiring courts to carry out and effectuate the expressed will of the testator. The doctrine was frankly and forcibly stated by Vice-Chancellor Page-Wood, in *Gosling* v. *Gosling, ubi supra,* thus: "That the court of chancery does not hesitate to strike out of a will any direction that a beneficiary shall not enjoy an interest thereunder until a later period, when the beneficiary has a vested interest, and has become *sui juris,* and demands immediate possession." This, it seems to me, is substituting the will of the beneficiary for the will of the testator.

It cannot, however, be open to doubt that a court of equity, in dealing with trusts, has a right to break in upon and thwart the expressed will of the creator of the trust in some cases. A notable example of such a case is when the trustee, to whom the creator of the trust has expressly given power of management and control, becomes incompetent, or is misconducting himself, to the peril of the trust and those interested therein, this court has never hesitated to remove such a trustee and to substitute its own appointee. The reason for such action is evidently necessity, and its purpose is to carry out the expressed intention of the creator of the trust, which intention is imperiled if his appointment of a trustee cannot be revoked for good reasons, and a trustee substituted by the decree of the court.

If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to wholly pre-

vent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instruction and directions for a course of conduct which, though differing from that prescribed by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode to produce the intended effect. The power of the court may well be exercised in a case of evident necessity. How far it may extend on other grounds need not be considered.

It is not improper to add that I should find extreme difficulty in applying even the doctrine of necessity to a case where the creator of the trust has plainly disclosed an intent to limit the benefit he intended, by an adherence to a course of conduct expressly mapped out, in the management of the trust. In the present case, if we assume that the testator contemplated a situation such as now confronts the trustees, and made express provision for it, how could it be maintained that any necessity existed requiring the court to direct the trustees to take another course of conduct on the mere ground that it would be more beneficial than that course which the testator prescribed?.

I have examined carefully all the cases cited in argument or which have been discovered by me on the subject of the power of a court of equity to deal with trusts under circumstances such as are presented in this case. I have found none more satisfactory in reasoning and conclusions than those decided in the State of Illinois. In a well-considered case, arising upon a trust created by deed, the court held (the opinion being delivered by Chief-Justice Caton) that in an emergency which had not been considered by the creator of the trust, and which, if anticipated, would have been provided for, a court of equity might take the place of the creator of the trust and do what he would have done. This power was placed upon the ground of a necessity to carry out the intent of the trust, when, by unforeseen circumstances, it was not answering the purpose of its creation. *Curtiss v. Brown, 29 Ill. 201.* Afterward the same court held that the

power of a court of equity to break in upon the terms of a trust
or to change the terms and conditions imposed by its creator,
exists only in extreme cases, as when not to exercise the power
the property held in trust may be lost or wholly fail to answer
the purposes of the trust. *Voris* v. *Sloan, 68 Ill. 588.* The same
court, with more questionable propriety, upheld the jurisdiction
of a court of equity to sell lands in which a life tenant or re-
mainderman had respective interests, and to invest the proceeds,
when it was made to appear that unless a court of equity inter-
fered, the property would be lost to both the life tenant and the
remainderman, although no trust was involved in that case.
*Gaven* v. *Curtin, 171 Ill. 640.* Later the court, while admitting
the power of a court of equity to interfere with a trust when the
preservation of the subject-matter of the trust or other like neces-
sity required interference, limited the power to such cases of
necessity, and refused to direct a change of trust property merely
to increase income or to subserve the interest of persons entitled
to the income. *Johns* v. *Johns, 172 Ill. 472.*

Recurring to the will and its codicils for the purpose of de-
termining what was the intent of the testator in respect to this
trust and its management, it is plainly apparent that his pur-
pose was to benefit two classes of persons, viz., (1) the two
infant beneficiaries who were each to receive $500 in each year
if the income of the fund should be sufficient therefor; and (2)
the Metropolitan Museum of Art, to which the whole fund is to
go at the death of the survivor of the two infants. Looking at
the provisions of the will and the first codicil, they entirely
justify the inference that the testator contemplated and ex-
pected that the income from the fund would suffice not only to
discharge the payments required by the first subdivision of the
second clause of that codicil, but also to pay the annual sums
to the infant beneficiaries under the second subdivision thereof,
and that there might be a remainder to be applied by the trus-
tees to the improvement of the property under the third sub-
division thereof, and even a balance to be paid to the Metropoli-
tan Museum of Art under the fourth subdivision thereof. Con-
sidering the great value of the real and personal property which
the testator impressed with this trust, there is another plain in-

ference to be drawn, as before suggested, viz., that testator's intent was that the ultimate beneficiary should receive the whole fund at the death of the surviving infant with such enhanced value as it might then have.

But there are provisions contained in the third clause of the second codicil which have a bearing upon what was in the contemplation of the testator when he made the final scheme for this trust, and which have given me much difficulty.  By that clause it is provided that if *at any time* the income of the trust fund should be insufficient to "discharge taxes and assessments" upon the real and personal estate in the fund, the deficiency shall be paid out of the income receivable by the Metropolitan museum under the other provisions of testator's will.  Do the provisions of this third codicil justify and require the inference that the testator contemplated that at some future time the income from the trust fund would become constantly insufficient to discharge the annual taxes, and that he intended that, in such event, the Metropolitan museum should thereafter pay the deficiency for the life of the surviving beneficiary?  It will be perceived that if such intent must be inferred it produces an alteration of the scheme of the trust previously prescribed.  That scheme contemplated and provided for yearly benefits to the infant beneficiaries.  The suggested alteration would, when the income proved constantly insufficient to pay the annual taxes, wholly deprive them of any benefit.  The original provision provided for possible benefits to the Metropolitan museum out of the income. The alteration, when the annual taxes constantly exceed the income, would impose a burden on that beneficiary to continue for an indefinite period, during which it would have no use of the trust fund or any part of it.

An alteration so completely destructive of the whole scheme of the trust ought not to be adopted upon any construction of the second codicil unless that construction is necessary.  If the language of the third clause is reasonably capable of a construction which will be in conformity with the previous scheme, I think it should be adopted.  It is difficult to conceive that the testator, if he intended so radical a change in the scheme of the trust, would not have expressed it in some more explicit lan-

guage. If he had said that the ultimate beneficiary should make up the deficiency in the taxes and assessments imposed on the trust fund whenever the income of the fund should thereafter become insufficient therefor, such an intent might perhaps be found. But in providing for the making up of such deficiency he used the words "at any time," which may refer to a single time or single times, and do not suggest the idea of constant and continued deficiency, and, in my judgment, give a clue to the meaning of the testator. Taxes, as is well known, are imposed upon valuations not often changed, although when changed, usually increased. But assessments are imposed by reason of benefits conferred by municipal improvements which are not constant, but casual. Now there is included in this trust a large tract of unimproved real estate in the growing city of Paterson. It must have been in the contemplation of testator that municipal improvements would be made which would occasion assessments to be imposed from time to time upon that property; which assessments, when added to the ordinary yearly taxes, would exhaust the income of the fund. In my judgment the intent of the testator, discoverable from this clause, when applied to the subject-matter of the trust, was to provide for such casual and intermittent impositions, and that it did not extend to or contemplate the situation with which the trustees are confronted, when the income is insufficient to discharge the ordinary annual taxes, and there is no reasonable ground to suppose it will ever become sufficient for that purpose.

Having reached the conclusion, upon the proofs, that the trustees cannot, under the present circumstances, or any circumstances that can be anticipated, so manage the trust fund as to carry out the plain intentions of the testator, and being of opinion that the circumstances were not within the contemplation of testator, or the subject of any direction in the scheme of the trust as devised by him, I am led to the further conclusion that a case of necessity is presented, requiring the intervention of this court and directions for a change in the management of the trust fund, if, by such change, the manifest intention of the testator can be practically carried into effect.

Nor do I think this court should refrain from intervening in

the management of the trust fund because two of the beneficiaries are infants. Under the situation in which the trust is, it is obvious that the provision made for their benefit will be wholly unavailable to them. If, by the intervention of this court and a direction for a change in the management of the trust, the benefit intended for them may be made available and indubitably secured to them, an additional reason for the intervention of the court is disclosed. I entertain no doubt of my power to determine whether such a change would be for their benefit, and, finding it to be for their benefit, to direct such a change.

The trust fund under consideration is so large that it cannot be difficult to formulate some scheme for its management which, with the assent and concurrence of the residuary beneficiary, the Metropolitan museum, will practically carry out testator's intentions. But I do not think the matter is so presented that I can now determine what is a proper or judicious scheme. The Metropolitan museum, by its answer, offers that, if it is permitted to come at once into possession of the real estate included in the fund, freed from the trust, it will accept the same, and relieve the trust fund from any liability for the taxes and assessments, &c., imposed and to be imposed thereon, which now burden and exhaust the income. This would leave in the trust the railroad stocks, now producing an income many times exceeding the annual sums payable to the infant beneficiaries. So long as the dividends from those stocks are paid the infants' interests will be protected. On being reminded at the argument that railroad stocks are not securities in which trust funds may be properly invested, the counsel for the Metropolitan museum offered to give additional security, to be approved by this court, for the complete and adequate protection of the income therefrom, so as to perpetually assure its sufficiency to pay the annual sums due the infants during their respective lives. Such a security ought, of course, to be of a kind which trust funds may be invested in. Some suggestion was made that security might be given upon some part of the real estate of which the Metropolitan museum seeks the present possession. But if this suggestion be pursued, it is obvious that the material for the formulation of a proper scheme is not before me. The question would involve

the consideration of what real estate should be thus mortgaged, and the right of the Metropolitan museum to execute such a mortgage.

Under these circumstances, I think the cause should be referred to a master to consider and report a scheme for the management of the trust fund upon the lines of the above opinion, so that, upon the coming in and approval of his report, a decree may be made in conformity thereto.