HENRY C. PITNEY, JOHN R. EMERY, FREDERIC W. STEVENS, MARTIN P. GREY, EUGENE STEVENSON, JAMES J. BERGEN AND LINDLEY M. GARRISON, VICE-CHANCELLORS.

---

ANNIE TAYLOR et al.

*v.*

GEORGE GARDINER DRAPER et al.

[Argued March 2d, 1906. Decided May 15th, 1906.]

A father, who was one of five tenants in common, agreed with his co-tenants to make a voluntary partition of lands. At his request, his share was conveyed to him in trust for his two infant children by deeds whereby

he took the legal title in fee and his children the equitable title. The deed was recorded, and afterwards the trustee, reciting that he was trustee, conveyed the lands to secure money borrowed by him. The complainant, claiming title under this deed, seeks a decree against the infant *cestui que trustent.*—*Held,* (1) that the father's request for, and acceptance of, the deed in trust was a declaration of trust in favor of and an advancement to his children; (2) that such an advancement may be sustained on the consideration of natural love and affection; (3) that in the absence of proof raising suspicion as to the advancement the *cestui que trustent* are not required to establish that the father knew that by the transaction he reserved no rights in the land and no power to revoke the trust; (4) that if that burden was cast on them, it is made out by the proofs produced by the complainant; (5) that the complainant acquired no title by her deed to question the title of the infant *cestui que trustent.*

On bill to quiet title.

*Mr. Edwin B. Goodell,* for the complainants.

*Mr. Harry N. Reeves,* for the defendants.

MAGIE, CHANCELLOR.

The complainant Annie Taylor (with whom is joined as complainant her husband, David C. Taylor) files this bill, asserting that she has some title to lands in Montclair, in the county of Essex, of which she has the peaceable possession, and claiming to have a good title thereto, to which lands she avers the defendants claim, or are reputed to have, some title, no suit or action being pending to test the validity thereof.

The prayer of the bill is that the rights of the parties may be determined by a decree, and that the complainant Annie Taylor may be decreed to have a perfect title. There is also a prayer for general relief.

The defendants are George Gardiner Draper and Isabella Carter Draper, two infants under the age of twenty-one years, who have appeared by their mother, as guardian *ad litem.* She has filed an answer submitting to the determination of the court the rights of the infants.

The real point in controversy will be disclosed by the following statement:

About March 30th, 1892, certain lands in Montclair, includ-

ing those now in question, were owned by five tenants in common, viz., Charles B. Draper, his brother, Frank B. Draper, and his sisters, Georgia A. Draper, Rebecca B. Draper and Ruth C. Draper. At that time the tenants in common agreed to make a voluntary partition of the said lands. This was effected by conveyances of a somewhat singular character. By a deed dated March 30th, 1892, Charles B. Draper and his wife conveyed to his three sisters his interest in all the said lands. By a deed of the same date, Frank B. Draper conveyed to his three sisters his interest in all the said lands. Then, by a deed dated on the 31st of March, 1892, the three sisters conveyed the particular lands in question to Charles B. Draper. This deed, however, did not convey those lands to Charles B. Draper in his own right, but to him as trustee for George Gardiner Draper and Isabella Carter Draper, his children, the defendants in this suit. The *habendum* clause of the deed reads thus:

"To have and to hold all and singular the above mentioned and described premises unto the said Charles B. Draper, his heirs and assigns forever, in trust, nevertheless, for the said George Gardiner Draper and Isabella Carter Draper, their heirs and assigns forever."

The consideration named in this deed to Charles B. Draper was the sum of one dollar, but from the statements of the bill, and from the proofs, it is made clear that its real consideration was the conveyance which, on the previous day, he had made of his interest in all the lands to his sisters. If, upon that consideration, his sisters had conveyed the lands in question to him in fee, he could have conveyed them to another person in trust for his children, or he could have declared a trust in favor of his children. A conveyance to the children themselves, or to a trustee for their use, or a declaration of trust in their favor, could be supported on the consideration of natural love and affection. What was done was substantially equivalent, because he took the title to the lands which were to be his share in the partition as a trustee, on a trust in favor of his children. It was a plain advancement to his children of a portion of his property. As Charles B. Draper and Frank B. Draper had conveyed to their sisters their individual interests, the deed from

the sisters to Charles vested him with the entire legal title to the lands thereby conveyed. The purpose to do this probably explains the conveyancing resorted to, and which has been characterized as singular. If each of the tenants in common had simply released his or her interest in the lands in question to Charles, upon the same trusts declared in the deed from the sisters, the trusts would have affected only four-fifths of the title. With respect to the other fifth, Charles would have been obliged to declare a trust in order to effect the purpose which was effected by the conveyances recited.

I therefore conclude that it is not open to dispute that by the deed to Charles B. Draper, while the legal title to the lands became vested in him, the equitable title in fee was vested in his children. Their title; thus created, is obviously good, unless it is open to attack for the reasons urged in this cause.

It is first contended that Charles B. Draper held no funds belonging to his children upon the possession of which, or upon the obligation arising from which, he created this trust. The proofs relied on come from his widow and one of his sisters, whose testimony cannot be deemed to go farther than to declare their ignorance of the existence of any moneys belonging to the children in the hands of their father. But if it should be admitted to establish the fact, it will not be effective to support the claim that the creation of the trust was without consideration. The claim ignores the power of a parent to make advancements to his children and the effect of a consideration of love and affection between parties of the same blood.

The title of the defendants is not open to this attack.

It is next contended that, assuming that the transaction indicates a gift to the infant defendants, there is cast upon them a burden of establishing in this cause, and by proofs, that their father, the trustee, at the time he accepted the deed in trust, was aware that there was no right reserved to himself by that deed, and that the deed was irrevocable.

I have not been referred to cases, nor have I discovered any cases, which cast such a burden upon children to whom a father has conveyed land by way of advancement, and on a consideration of natural love and affection, unless circumstances are

proved exciting suspicion of the unfairness of the transaction. The right acquired by children under a declaration of trust by a father, made in their favor for such a consideration, differs in no respect from that which would result from a deed to them. When a voluntary settlement had been completely executed, though no power of revocation was reserved, it was held, in the court of errors that it could not be annulled except with the consent of all the *cestui que trustent. Crue* v. *Caldwell, 52 N. J. Law (23 Vr.) 215.* See *Gulick* v. *Gulick, 39 N. J. Eq. (12 Stew.) 401.* In *James* v. *Aller, 62 Atl. Rep. 427,* the court of errors affirmed so much of a decree of this court as denied relief to a father claiming to avoid gifts both of real and personal property to his children, although the donor reserved no right to himself and no power of revocation. The remaining part of the decree, which gave relief to the father in respect to a further gift which practically stripped him of all his accumulated property, because such gift was deemed improvident, was reversed by the court of errors, although there was no reservation of a power to revoke.

In many cases involving the validity of gifts, such proofs as are claimed to be necessary in this case to sustain the defendants' title have been held to be required, but in every case that I have examined there were special circumstances tending to throw doubt upon the transaction, as, *e. g.,* where the gift has been obtained from an aged or infirm donor (*Corrigan* v. *Pironi, 48 N. J. Eq. (3 Dick.) 607; Coffey* v. *Sullivan, 63 N. J. Eq. (18 Dick.) 296; Mott* v. *Mott, 49 N. J. Eq. (4 Dick.) 192; Martling* v. *Martling, 47 N. J. Eq. (2 Dick.) 122*), or in favor of a person holding a confidential relation to the donor (*Huguenin* v. *Baseley, L. C. Eq. \*406; Corrigan* v. *Pironi, ubi supra; Mulock* v. *Mulock, 31 N. J. Eq. (4 Stew.) 594; Hall* v. *Otterson, 52 N. J. Eq. (7 Dick.) 522; S. C., 53 N. J. Eq. (8 Dick.) 695*), or in favor of a person having influence over the donor (*Garnsey* v. *Mundy, 24 N. J. Eq. (9 C. E. Gr.) 243; Coffey* v. *Sullivan, ubi supra; Martling* v. *Martling, ubi supra*), or from one who was illiterate and without the benefit of competent counsel (*White* v. *White, 60 N. J. Eq. (15 Dick.) 104*). In such cases the suspicion engendered by the circumstances is deemed to cast upon the donee accepting the gift the burden of

satisfying the court that the donor understood the effect of the transaction, and voluntarily made the gifts and divested himself of dominion over the subject of the gift.

In the case in hand there is no evidence as to the health or age of Charles B. Draper at the time of this transaction, but I think it must be inferred that he was not beyond the prime of life, and was in ordinary health. There appears to be nothing to justify any pretence that the acceptance of this trust was under any influence from without. On the contrary, the evidence produced by the complainants shows that the conveyance was made in trust upon his own desire, expressed to his sisters. As the infants must have been at the time less than three years old, they could not have exerted any influence on the father to make the gift. His donative purpose appears by complainants' proof. By the same proofs his intent was "to save the property for his children." When, with this purpose, he accepted the trusteeship, his gift to his children was complete, and there are no circumstances to excite doubt or suspicion in respect thereto.

If the doctrine which requires a donee to prove that the donor knew that he had reserved no interest to himself and that his gift was irrevocable is applicable to the case of an advancement from father to child where no circumstances raise doubt or suspicion, I think that such proof is made out by the evidence produced by complainants. It thereby appears not only that the donor intended a gift for his children, but also that he desired the land which was the subject of his gift to be saved for them. When he declared that his purpose in taking the conveyance of the lands in trust was to save them for his children, the clear inference is that he was divesting himself of dominion, and desired to put it out of his power to deprive his children of the benefit he designed for them, however tempted he might afterward be, and intended to do so.

The proofs further show that Charles B. Draper afterward conveyed these lands to one Newmark. In the conveyance he called himself a trustee. Newmark thereby had notice of the trust. Besides, the trust deed also was upon record. The proofs also show that Draper's conveyance to Newmark was designed to secure a loan from Newmark to Draper. With the notice ac-

quired from the deed and the record, Newmark could acquire no interest in the land as against the infant *cestui que trustent.* The complainants' right to the land is acquired from Newmark. As Newmark acquired no right against the infants, she has none.

It is immaterial, in my judgment, whether the complainants' bill seeks to invoke the general jurisdiction of the court or the special jurisdiction conferred by statute in respect to the quieting of titles. If its purpose was, as indicated by some of its recitals, to proceed under the statute, then, as neither party demanded an issue at law, the court is required to determine the respective claims according to its usual practice. Under such circumstances the case for relief which must be made out is practically the same as would be required upon a bill invoking the general jurisdiction of the court.

My conclusion is that no relief can be granted upon this bill, and it must be dismissed, with costs.