## MATHIAS J. PRICE

### v.

## EMILY A. LONG et al.

[Decided May 11th, 1917.]

1. The court of chancery may, in an emergency, order the conversion of trust assets, not authorized by the trust instrument, or contemplated by the maker thereof.

2. Under the facts in this case the offer of $400 a share for the stock of the Long & Koch Company should be accepted.

---

On bill.

Messrs. Lindabury, Depue & Faulks (Mr. Frederic J. Faulks), for the complainant.

Messrs. Cortlandt & Wayne Parker (Mr. Cortlandt Parker), for the defendants Walter L. Long and others.

Messrs. Lum, Tamblyn & Colyer (Mr. Ernest Lum), for the defendants Emily A. Long and Fred W. Taylor, as trustee.

LANE, V. C.

Philip H. Long died on December 9th, 1908. Under his will he gave to his executors and trustees, Frederick W. Taylor and Mathias J. Price, sixty-five shares of stock of the Long & Koch Company, to be held by them in trust for a period of twenty-five years. The income or dividends from twenty-seven and a half shares of such stock is to be paid to his wife, Emily A. Long, so long as she lived; if she dies prior to the expiration of the twenty-five years, then the income on such twenty-seven and a half shares is to be paid to her brother Edmund Taylor, a sister, Kate Prosser, and her sister-in-law Mrs. Emily Taylor, and such of her nephews and nieces as shall be living at the time of her death, except that if her nephew Harry E. J. Taylor should predecease her, the share that he would be entitled to if living is to be paid to his wife and children. The income on the remaining thirty-seven and a half shares is to be divided equally between testator's two brothers, Frederick T. Long and Walter L. Long, and such of testator's nephews and nieces as shall be living at the time of testator's death, and his cousin Philip J. Long also is to share in the income so long as he shall remain an employe of the company. At the end of twenty-five years the said sixty-five shares of stock is to be sold and disposed of, certain relatives having the first right to purchase. The proceeds are to be divided among certain charities and among certain relatives. Some of the beneficiaries are at this time unascertained; the residences of those that have been ascertained are widely scattered in this country and abroad; some are infants.

The Long & Koch Company is a manufacturing concern founded by Philip Long and to which he gave his attention up to the time of his death. Its chief business is the making of cheap jewelry, with a very small margin of profit. During the life of Mr. Long it was extremely successful, and for a few years after his death continued to be. Its dividends for several successive years were as follows: 1904, eighty per cent.; 1905, one hundred per cent.; 1906, one hundred and thirty per cent.; 1907, one hundred and seventy-five per cent.; 1908, one hundred per cent.; from 1908 to 1912, one hundred per cent. In

1913, the dividends were reduced to fifty per cent.; in 1914, further reduced to twenty per cent.; and since 1914, no dividends have been declared. The testimony is to the effect that, although a dividend may be declared for the year 1917, it will be small. The corporation is a close corporation; it has but one hundred and fifty shares of stock. Of this the estate holds sixty-five; Mrs. Emily Long, ten; Julius Koch, seventy-four; Mrs. Koch, one. The control is evenly divided between the Koch and the Long interests. Mr. Koch is now at the head of the concern, and Frederick W. Taylor, one of the trustees, is employed by the corporation at a salary.

The reason for the decline of the business is attributed to two sources—*first,* the loss of Mr. Long, whose genius had built up the business; *second,* the general depression in the jewelry trade. The book value of the stock is in excess of $1,000 a share. Mr. Koch has offered to buy out the interest of the estate at a price of $400 a share. Frederick W. Taylor, one of the trustees, is against the acceptance of the offer, whereas Mr. Price, the other trustee, considers it not only advisable in the interest of the estate, but necessary, if great loss is not to be sustained, that the offer be accepted. He, therefore, brings this bill asking this court to direct the sale, and make parties all persons whom he knows to have an interest in the estate. The application is resisted by certain of those entitled to income, among them the widow, and also by the co-trustee. Many of the parties have not appeared. The answering defendants, while admitting that because of the uncertainty attending the present investment it may be desirable that the stock be sold, yet insist that the price is not adequate and raise by their answers the question of the power of the court in the premises. Mr. Price is in nowise connected with the company, and he takes the position that it is his duty to bring the situation to the attention of the court. The attitude of Mr. Taylor is unconsciously affected by the fact that a sale of the stock may mean the loss of his position with the company, and will, unquestionably, lead to the loss of the influence which he now enjoys. While the book-value of the stock is in excess of a thousand dollars, it is impossible to sell it to anyone except Mr. Koch for any reasonable figure. Mr. Taylor frankly

concedes this. Koch says $400, considering all of the circumstances, is about fair value of the stock, and I think that under all the circumstances it is. Counsel for the complainant furnished me memoranda of the cases on both sides of the question, and I have considered them.

Chancellor Runyon, in *Fidelity Company* v. *United Company, 36 N. J. Eq. 405* (at *p. 408*), says: "It is the rule that the directions for investment contained in an instrument of trust are imperatively obligatory on the trustee; but by the direction of a competent court he may depart from them. The court, however, should exercise its authority only in view of the existence of a necessity. The power of this court to abrogate or annul any of the terms of the before-mentioned agreements should not be exercised except for clear and cogent reasons, and with full opportunity to the parties who are to be affected by such action to be heard."

Chancellor Vroom had said, in *Oliver* v. *Oliver, 3 N. J. Eq. 368* (at *p. 373*): "One thing is certain, this court will not interfere with the appropriation of this trust fund, or direct it differently from the intention of the testator except in a very clear case."

In *Dodd* v. *Una, 40 N. J. Eq. 672*, the court of errors and appeals held that this court had no power to impose its view upon the method in which the funds of a savings bank was to be dealt with where the details were specified by statute. In *Lister* v. *Weeks, 61 N. J. Eq. 623*, the court of errors and appeals sustained an order made by the court of chancery directing a certain investment to be changed, but put its decision upon the ground that the parties in interest, especially the appellants, had consented to it and could not thereafter withdraw their assent. The power of the court of chancery in the exercise of its general administrative jurisdiction to sanction or direct trustees to perform acts contrary to the provision of an instrument of trust where there arises an emergency or a state of circumstances which it may reasonably be supposed was not foreseen or anticipated by the author of the trust, and is unprovided for by the trust instrument, and which renders it desirable and perhaps even essential in the interest of the beneficiaries that such act

should be done, has been sustained in England in the cases of *In re New et al. (1901), 2 Ch. Div. 534; In re Tollemache (1903), 1 Ch. Div. 955.* In the first case, Romer, J., said: "The principle seems to be this—that the court may, on an emergency, do something not authorized by the trust. It has no general power to interfere with or disregard the trust; but there are cases where the court has gone beyond the express provisions of the trust instrument, cases of emergency, cases not foreseen or provided for by the author of the trust, where the circumstances require that something should be done," and, further, "it is impossible, and no attempt ought to be made to state or define all the circumstances under which, or the extent to which, the court will exercise the jurisdiction; but it need scarcely be said that the court will not be justified in the sanctioning of every act desired by the trustees and beneficiaries merely because it may appear beneficial to the estate; and certainly the court will not be disposed to sanction transactions of a speculative or risky character."

I have grave doubt as to the power of this court, but because of the existence, I think, of the present emergency, and the fact that if I should decline to exercise jurisdiction, the applying trustee will have performed his duty and there will probably be no review by the court of errors and appeals, whereas if I exercise jurisdiction the present defendants will have the opportunity to appeal, and the matter may be passed upon by that court, I am going to resolve the doubt as to jurisdiction in favor of the complainant. The situation is such that I cannot assume responsibility for the continuance of this investment in this stock. Not only has the business of the company suffered seriously because of the loss of Mr. Long, and the general depression in the business, to such an extent that its dividends have been reduced from one hundred and seventy-five per cent. per year to *nil*, a condition which I think was not in the contemplation of the testator, although it may be said that he must be presumed to have contemplated it; but a world war has, since his death, broken out, in which this country has now become involved, a condition which he certainly did not contemplate, and which, I think, it is not to be presumed he contemplated. As a matter

of fact, no one contemplated it, except, possibly, the governmental authorities of Germany. It is impossible to determine how long the war will last or what its consequences will be or what the conditions will be upon a readjustment after its close. It must have a disastrous affect upon such businesses as that carried on by the Long & Koch Company, manufacturing, as I before stated, cheap jewelry at a very narrow margin of profit. Coming on the heels of the condition created by the loss of Mr. Long, and the general depression in the jewelry business, it may have a very disastrous effect upon the business of Long & Koch. It should also be kept in mind that the control of the business is equally divided between the Koch and the Long interests, and this equal division must inevitably, if the business continues to lose money, lead to discord within the company itself. Under the circumstances, I think that the offer of $400 a share is a fair one; that it should be accepted, notwithstanding the opposition of the co-trustee and of certain other beneficiaries. Indeed, the co-trustee and the beneficiaries appearing concede in their answers, and conceded on the oral hearing, that it was advisable that the stock should be sold. The only question was the question of price. They all conceded that no more could be obtained. Dissolution cannot be forced. Unless this offer is accepted it seems to me that this risky investment must be continued.

I will advise a decree permitting and directing the sale of the stock at $400 a share, and at the foot of the decree application may be made for instructions as to the investment of the proceeds. Settle the decree on one day's notice.