Bernard M. Shanley, late of Newark, left an estate, the residue of which yields upwards of $400,000 annually. After pecuniary gifts, and the use of his homestead to his widow, presently to be emphasized, he bequeathed the income of the residuary estate to his widow and to his three sons, Bernard, William and Roosevelt, in equal shares during the life of the widow and her widowhood; upon her death or marriage, the principal equally among the sons. The sons are dead. Bernard's interest is, apparently, intact. William's and Roosevelt's have been pledged for their debts, now, approximately, $400,000 and $1,500,000, respectively.
The gift of the use of the homestead reads:
"Thirdly — I give and bequeath to my wife, the sole right, so long as she shall remain my widow, to occupy as her home our present residence, being the house at No. 82 Washington Street, Newark, New Jersey. * * * I hereby provide and direct, however, that if my wife shall not wish to occupy the said house and desires a home elsewhere, my executor shall, at an expense not exceeding twenty-five thousand dollars, provide for her a residence of her selection either by purchasing the same or by purchasing a building site and erecting such residence thereupon. I direct that the title to such residence be taken and held in the name of my executor for my estate, and that the expense of paying all taxes, assessments, municipal charges, insurance and for keeping such residence of my wife in repair, whether it be our present home or another selected by her, be paid out of my estate."
John F. Shanley, testator's brother, was appointed executor with "full power and authority to sell and convey any and all of my real estate including my said residence, only if my wife shall not desire it as her home, in which event she may join in the conveyance of the same. I desire that he shall sell and dispose of all my other real estate as soon as he may deem it advisable."
By a codicil, the three sons were nominated executors upon the death or the inability of the brother to qualify. John *Page 564 
F. Shanley qualified, and upon his death two of testator's sons, William and Bernard, were appointed executors. When the survivor of them, Bernard, died, the complainant was appointed trustee, December 18th, 1924.
The homestead, occupied by the testator and his wife from their marriage in 1883 until his death in 1900, stately and luxurious, in the then quiet, exclusively residential section of the town, favored by the fashionable, the prominent and the wealthy, now is in the business center with all its hurly-burly, passe, uncomfortable and unfit. The widow is still in possession, but for ease lives in the Oranges. She has offered to surrender her life right for an annual consideration of $15,000, to reimburse her for the annual outlay of a suitable home, such as, as she contends, her husband contemplated she should have. The estates of William and Roosevelt Shanley object. The trustee asks for instructions.
Subject to the right of occupancy reserved to the widow, the homestead was to be converted into cash by the executors. The executors had power of sale and conversion, and, in her lifetime, only if the widow consented. The executors' powers of sale and conversion survived by operation of law to their successor, ordinarily an administrator cum testamento annexo. The complainant's office is that of trustee appointed by this court to "execute and complete the trusts created and decreed in said last will and testament and codicil thereto of Bernard M. Shanley, Sr., deceased." It succeeded to the power of sale and conversion. It has no power of purchase and no authority in law to purchase the widow's interest. The funds of the estate belong to the legatees and an investment of any portion in the purchase would be a misappropriation, in violation of the statute, subjecting the trustee to the penalty of restoration.
The argument that the radical changes in the neighborhood, rendering the homestead unfit and defeating the gift of the use, was not contemplated by the testator and that to effectuate the gift, there now should be done what he would have done had he foreseen the contingency — the supposititious thing that he would have done being, the purchase of *Page 565 
another home equivalent in value to the homestead, now valued at $200,000 and upwards — finds no support in the facts nor justification in law. It would be a strain to assume that Mr. Shanley, long a resident of the city, foremost in business and alive to its progress, did not, thirty-three years ago, sense the probable advance of business and its expansion from its then center to his neighborhood, nearby, during the lifetime of his widow, then a young woman; and the consequences. And it would be equally trying to believe that he was minded that his executors should be lavish, limited as they were to $25,000.
In its jurisdiction over trusts, to preserve a trust, equity may, in an emergency, unanticipated and unprovided for by the creator, decree to be done what he would have done to carry out the intention. Necessity moved Chancellor Magie in Pennington
v. Metropolitan Museum of Art, 65 N.J. Eq. 11, to change the mode of executing a trust to effect the intention, and he illustrates the principle upon which equity intervenes to save trusts. The doctrine of necessity has no application to the property rights in a trust. The rights cannot be altered to prevent a disappointment which the creator might have provided against had he foreseen the mishap.
Here, the testator, in creating the trust of his residuary estate, gave all to his three sons except the widow's share of the income and the use of the homestead. The division is of the totality of the fund, and the share, income and principal, to each, is definite. The gift of the use of the homestead, the widow's right of choice and the alternative direction to the executors upon her election, are in plain words, in language unmistakable, single of meaning. The gift is of the homestead, kept, or another home, kept, as she chose, the cost not to exceed $25,000. The intention thus expressed in phraseology of unequivocal significance precludes judicial interference; the court's duty is to execute the intention as it is written in the will. "Courts are not at liberty, because an event has happened which the testator has not provided for, to disregard the ordinary rule of construction that words must be read according to their natural *Page 566 
and reasonable meaning, and inject into the will the provision which the testator would probably have made had he contemplated the happening of the contingency." Stout v. Cook, 79 N.J. Eq. 573.
The change in circumstances, which practically nullifies the gift, is a misfortune, but we cannot retrieve the widow's loss out of the pockets of the sons' estates. The trustee is instructed that it cannot purchase the widow's interest, nor make amends for the miscarriage of the gift out of the funds of the trust estate.
There is a practical and conventional side, however, to the situation. If there were a purchaser for the property, the price of the widow's consent to the exercise of the power of sale could with perfect propriety be fixed at the annual income from the proceeds, but there is presently no market and opportunity for an advantageous sale seems remote. *Page 567