The surviving executor and trustee of the estate of Charles T. Hopper, deceased, has asked the court for instructions. *Page 360 
The bill names, as defendants, Mrs. Maude M. Hopper, the widow of decedent, and the attorney-general of this state, the latter because of the indefiniteness of the charitable devise and remainder, as contained in the will of decedent.
The bill discloses that, by reason of economic conditions prevalent throughout the country, the trustee is unable to comply with the terms of the will, without a sale of assets of the principal or corpus of the estate, and points out that if these assets are sold to satisfy the arrearages due the widow on an annuity created by the testator in her favor, that the estate, which would normally be distributed to the charities, on the death of the widow, will be greatly diminished and, in fact, entirely used up in future payments on account of the widow's annuity, unless economic conditions change for the better in the near future.
The widow of the decedent has filed an answer in which she joins in the prayer of the complaint, and the attorney-general answers by averring that "he is a stranger to all and singular, the matter and things in the said bill of complaint contained * * * and this defendant submits himself to the judgment of this honorable court, and prays that his interest may be protected and saved to him."
The trustee is impartial and has not, therefore, indicated his thought as to what should be done; the widow rests on what she insists are her legal and equitable rights, i.e., to have paid to her not less than the yearly sum as provided for in the will.
In the absence of any decided stand on the part of the trustee, the court, realizing that the unknown charities mentioned in the will (the ultimate beneficiaries after the death of the widow) should have the benefit of a thorough investigation of both a true construction of the will and the law pertaining thereto, has expended more effort than would appear on the surface, and more than would, to the outsider, appear to be necessary, in view of the result reached.
Before taking up the question of the construction of the will, let it be said that it appears that when decedent executed it, in August of 1930, the income from his investments exceeded $9,000 per year and continued to yield approximately *Page 361 
that amount up until the time of his death, in June of 1932, but almost immediately thereafter the income practically ceased, so that the yield is not now sufficient to pay the carrying charges on real estate, and other expenses of administration, and nothing on account of the annuity directed to be paid to his widow by the terms thereof.
To detail herein the causes leading up to the dilemma confronting the trustee will serve no useful purpose; suffice it to say that mortgagors have defaulted, making foreclosures necessary, resulting in the purchase by the trustee of the mortgaged premises at foreclosure sale; that the stock which formerly paid large and regular dividends has ceased to pay anything and there is an arrearage of over $7,000 due the widow by reason of her annuity.
First then, as to testator's intent, as disclosed by the provisions of the will, having in mind the law as stated by Vice-Chancellor Backes in Fidelity Union Trust Co. v. J.R.Shanley Estate Co., 113 N.J. Eq. 562 (at bottom of p. 565):
"Courts are not at liberty, because an event has happened which the testator has not provided for, to disregard the ordinary rule of construction that words must be read according to their natural and reasonable meaning, and inject into the will the provision which the testator would probably have made had he contemplated the happening of the contingency."
The testator, after making provisions for the payment of debts and funeral expenses, in the fifth paragraph of his will, devised the homestead in which he resided at the time of his death to his trustees, in trust, to permit his widow to live in the same for life, "free from all rent and expenses for taxes, water, sewer, repairs and insurance, all of which shall be paid by them from my estate." This was followed by provisions for sale of the homestead, with the consent of the widow, and reinvesting the proceeds in other property for her use.
Under the sixth paragraph of the will all the rest, residue and remainder of the testator's estate is devised and bequeathed to his trustees, in trust (a) to pay over $500 per year for the upkeep and maintenance of certain cemetery lots. *Page 362 
Then comes sixth (b), in which the testator directs that:
"All the balance of net income from my residuary estate shall be paid monthly to my wife, and this income shall not be subject to alienation, anticipation or assignment by her, nor to any debts which she may contract, being intended for her sole support and maintenance. Said monthly payments shall begin at once after my death. Should the net income so to be paid to my wife at anytime fall short of Six Thousand Dollars in any calendar year oryears, my executors or the survivor shall pay her from myprincipal or capital estate the amount requisite to bring herannual income to that amount. It being my intention that my wife receive said sum of Six Thousand Dollars before or at the expiration of each annual year. Should, because of physical disability resulting from accident, or should, because of physical or mental illness of any kind resulting from any cause, my wife shall require for her care and comfort additional funds for her immediate use, or any increased or additional monthly installments of income over and above any monthly installment of income actually paid as above provided, then * * * my executors are hereby expressly directed to give to my wife, without delay, such necessary funds in cash, to be raised either by sale of part of my principal estate, or by anticipation of income, as they shall deem best, or as she may in writing, if able, direct."
There can be no question but that the testator devoted the net income from his residuary estate to his wife's support and maintenance and that in addition to net income he dedicated the entire corpus of his estate to the payment of an income of not less than $6,000 per year to his wife. He provided for the sale of the corpus of his estate in the event that the income therefrom should not equal $6,000 per year.
The testator having made provisions as above outlined for his wife, and having authorized the use of the corpus of his estate in order that said provisions might be fully carried out, in the eighth clause of his will, after having taken care of the question of funeral expenses for his wife and the perpetual care of cemetery lots, provided:
"All the remainder of my estate shall be distributed by my * * * trustees among such homes or institutions for the care of crippled children, as they, in their sole discretion shall think best and shall select, * * * located and established on Absecon Island."
The entire estate of decedent was disposed of in the first eight clauses of his will and then, in the ninth and tenth *Page 363 
clauses, the testator advised his trustees as to the character of investments to be carried by them in investing the moneys which came into their hands and he was evidently anxious that the stock of the American Meter Company be continued by his trustees, and he said:
"Particularly is it my desire that my holdings in stock of American Meter Company be retained as part of my estate and be distributed in kind on the termination of this trust, and I do absolve and discharge my said executors from all liability by reason of any loss which my estate may sustain by reason of their complying with these requests. I appreciate, however, the possibility that because of business changes or otherhappenings, it may be prudent to sell such securities and my executors and trustees are hereby authorized to sell said holdings whenever they think best so to do, without liability as aforesaid, excepting the stock of American Meter Company, regarding which I make the following direction."
It is apparent that testator was cognizant of the financial condition of the country at the time of the making of his will and he must have been continually aware of it, up until the time of his death. He was anxious that the American Meter Company stock be not sold but, notwithstanding that anxiety and the safeguards he threw around the sale of that stock, he provided that it could be sold without regard to those safeguards if a situation arose under the following circumstances:
"Except as may be required to satisfy the income payments or increase thereof, or additional payments as provided in paragraph Sixth (b) above."
In other words, if, in order to secure to his widow the annuity of not less than $6,000 it should become necessary to sell the American Meter Company stock, he authorized his trustees to sell it, without the necessity of getting consents or otherwise following the procedure that would be necessary before the trustees could sell the stock in the event that the proceeds thereof were not required to raise the moneys necessary for the widow's annuity.
A careful reading of the provisions of paragraph tenth demonstrates that the entire paragraph deals with the disposition *Page 364 
of testator's assets by sale only when the sale is for purposes other than the payment of the widow's annuity, and in the event of sale for the purpose of paying that annuity, all the restrictions of paragraph tenth are removed and reference is had to paragraph sixth (b), in which the trustees are authorized to sell "my principal or capital estate in an amount necessary to satisfy the annuity."
It will be observed that in paragraph tenth the testator says:
"The cardinal rule of interpretation of this provision of my will being my desire to retain this stock during the life of my wife to be distributed in kind to charity."
This rule of interpretation, however, applies only where the sale does not arise through the necessity of paying the annuity reserved to the widow.
The intent of the testator was as set forth in the thirteenth paragraph of his will:
"Said will is made by me after earnest thought as embodying the best method of providing for her life's care and protection."
It may well be that in order to pay to the widow the arrearages due her it will be necessary to sell the American Meter Company stock, in fact, it does appear that without the sale of this stock, or a portion of it, the widow's claim may not be paid, and it is also true that, unless financial conditions change for the better, the probabilities are that, within a few years, the entire corpus of the estate will have been disposed of in order to pay to the widow the $6,000 a year reserved to her. She is presumed to have this situation and possibility clearly before her when she asks that the trustee pay to her the arrearages due and that he make provision for paying the subsequent installments of annuity as they fall due. Is the court of chancery justified in denying the relief which she seeks in order to protect her against the contingency above pointed out and to also protect her against the day when there will be nothing in the estate with which to pay her any further moneys? *Page 365 
The residuary legatees, the unknown charities, are only entitled to take the residue remaining after the widow's death, and being unknown or undesignated, they cannot appear in this proceeding, excepting through the attorney-general, but if the court has a right to protect them in the future realization of a portion of the estate of the decedent, it should do so, but may it protect them to the extent of denying to the widow that which the testator said she should have in all events, to wit, not less than $6,000 per year, to be paid out of income or corpus?
There are many cases in this state dealing with the authority of the court of chancery to exercise its jurisdiction over trusts so as to preserve them, and holding that, "in an emergency, unanticipated and unprovided for by the creator, decree to be done what he would have done to carry out the intention of the intestator."
In Pennington v. Metropolitan Museum of Art, 65 N.J. Eq. 11,
Chancellor Magee said:
"It cannot be open to doubt a court of equity, in dealing with trusts, has a right to break in upon and thwart the express will of the creator of the trust in some cases."
Vice-Chancellor Backes, in Fidelity Union Trust Co. v. J.R.Shanley Estate Co., supra, in referring to the PenningtonCase, said:
"The doctrine of necessity has no application to the property rights in a trust. The rights cannot be altered to prevent a disappointment which the creator might have provided against had he foreseen the mishap."
In the case sub judice, to "break in upon" the trust created by the testator for the protection of the ultimate or residuary legatees would result in the denial to the life tenant of the benefits given to her under the will and would be in absolute contradiction of the testator's declared intention and would be carrying the doctrine of the Pennington-Metropolitan Case far beyond the pronouncement of the court in the rendition of that decision. The court, in the Pennington-Metropolitan Case, said:
"If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to *Page 366 
wholly prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instruction and directions for a course of conduct which, though differing from that prescribed by the terms of the trust, willactually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case.
"Necessity may require a change of mode to produce the intended effect. The power of the court may well be exercised in a case of evident necessity."
But after announcing that doctrine which, in the present case, does not help the residuary legatees, the court further said:
"It is not improper to add that I should find extreme difficulty in applying even the doctrine of necessity to a case where the creator of the trust has plainly disclosed an intent to limit the benefit he intended, by an adherence to a course of conduct expressly mapped out, in the management of the trust. In the present case, if we assume that the testator contemplated a situation such as now confronts the trustees, and made express provisions for it, how could it be maintained that any necessity existed requiring the court to direct the trustees to take another course of conduct on the mere ground that it would be more beneficial than that course which the testator prescribed?"
So in the instant case, a reading of the will discloses that the testator realized conditions, and said: "I appreciate, however, the possibility that because of business changes or other happenings," it may be prudent to sell, c., and the testator, having contemplated a situation requiring a sale and having directed that the sale be made in the event of the necessity therefor in order to pay the wife's annuity, how can this court take a course other than that prescribed by the testator, merely because it will save something to the residuary legatees?
I have found no case in which the courts have gone so far as to act contrary to the expressed provision of a trust, excepting as they have done so for the purpose of preserving the trust property for the benefit of all interested therein. In *Page 367 
other words, no case where the court has done what is asked to be done in this case, to wit, deprive the widow of the annuity created for her in order that the residuary legatees might ultimately receive the trust estate.
In 26 R.C.L. 1283 § 134, it is said:
"A court of equity has the power to do whatever is necessary to be done to preserve the trust from destruction, and in the exercise of this power it may, under certain unusual circumstances, modify the terms of the trust to preserve it, but not to defeat or destroy it."
By modification of the trust under consideration so that the widow should have anything less than the $6,000 reserved to her would be to defeat the trust created by the testator, in so far as the widow is concerned. It might appear that the charities, herein called the residuary legatees, would never come into possession of anything, but even if that were so, the carrying out of the trust has destroyed nothing because the charities were entitled to nothing excepting residue after satisfying the widow's claim.
The rule stated in Perry Trusts (7th ed.) 1307 § 767, is applicable to the situation in the instant case:
"It is not the interests in remainder, as such interests may appear to the court, that are to be considered and conserved, but their interests as the creator of the trust estate in remainder provided for them."
Many New Jersey cases have dealt with the power of this court to "break in" on the trust in cases of necessity and emergency, for instance, in Schulting v. Schulting, 41 N.J. Eq. 130,
where a mortgage was permitted "to save the real estate." Price
v. Long, 87 N.J. Eq. 578, deals with the necessity under an emergency not anticipated by the author of the trust, and necessary to preserve the trust but, in that case, the court was not dealing with a situation where, as here, the life tenant, for the benefit of the remaindermen, would be deprived of the annuity provided for her.
In New Jersey National Bank v. Lincoln Mortgage Co.,105 N.J. Eq. 557, powers outside the trust were conferred to preserve the estate and, in that case, Vice-Chancellor Buchanan has carefully cited the many New Jersey cases *Page 368 
dealing with this subject, and 3 Bogert on Trusts § 562 etseq., sets forth the many instances in which a court of equity, under the theory of emergency and necessity, has broken in on the trust. That author also points out that some courts have done so by a forced construction of testator's intent, with the result that it has been held that an intent other than as clearly expressed in the will would have been the intention of the testator had the necessity or emergency confronted him.
We do not, in any way, question the authority of the court to meet emergency and necessity and give relief outside the strict provisions of a will, but do hold that in the instant case to deprive the life tenant of the annuity provided for her under the plain terms of the will is not within the power of this court, even though by so doing the remaindermen would be assured of the ultimate benefit of the bequest in their favor.
The complainant is advised that the assets of the estate are dedicated to the payment of the widow's annuity and that they may be sold for that purpose.