Under a trust agreement dated October 20th, 1930, entered into by Catherine Simon with New Jersey Title Guarantee and Trust Co. (hereinafter called Title Co.), she delivered to the Title Co. as trustee, $10,000 to invest in first mortgages on improved real property in this state, payment of principal and interest to be guaranteed by the Title Co., or some other responsible company, and to pay the interest thereon to Anna G. Ewald, the trustor's daughter, for life and upon her death to pay such interest to the then living children of Mrs. Ewald until her youngest child arrives at the age of twenty-one, when the principal is to be divided equally among said children. The agreement further provides that if Mrs. Ewald should die without children surviving, or all her children should die before the youngest arrives at the age of twenty-one, the corpus of the trust is to be divided among the trustor's then living children, or if no such children be then living, among the trustor's next of kin. The agreement is silent as to whether or not it is revocable.
The entire principal of the trust was invested immediately in a bond running to the Title Co. as trustee, secured by first mortgage on improved real property in Jersey City, payment of principal and interest being guaranteed by the Title Co., which bond and mortgage the Title Co. still holds, the principal having been reduced to $9,925 and the interest thereon paid to date. The Title Co. suspended business February 14th, 1939, and was taken over by the commissioner of banking and insurance for liquidation.
The bill of complaint herein was filed by the trustor praying that the trust be dissolved and the assets of the trust be delivered to her, or in the alternative if that relief cannot be granted, that a new trustee or trustees be appointed to administer the trust. The defendants named in the bill *Page 548 
beside the Title Co. and the commissioner of banking and insurance, are Mrs. Ewald (the life beneficiary named in the trust agreement), her two children both minors who are the present probable beneficiaries in remainder, and the trustor's three other children who are designated by the agreement as remaindermen after Mrs. Ewald's death, in the event she leaves no child who lives to the age of twenty-one.
The sole ground for dissolution of the trust alleged in the bill as originally filed is that the corpus of the fund cannot be invested in guaranteed mortgages as directed by the trustor, the inference being that the Title Co. can no longer guarantee payment of principal and interest of mortgages and that its existing guarantee is valueless. Some time after this cause was heard and testimony had been taken and the case closed, the complainant, to meet the testimony, obtained an order on consent of all defendants, amending her bill to charge as additional grounds for dissolution of the trust, that when she executed the agreement she did not understand the nature of the trust as provided therein; that it is not in accordance with her intention at the time she executed it and that had she known its legal effect, she would have directed that a power of revocation be included therein.
All beneficiary defendants consent to the dissolution of the trust and the return of the trust assets to the trustor, except the two infants who do not and cannot consent. The Title Co. and the commissioner of banking and insurance have no interest in complainant's prayer for cancellation of her agreement and Mrs. Ewald, mother and guardian ad litem in this suit of the infants, expresses for them consent to the granting of complainant's prayer. A solicitor, who was not appointed by the court, filed a formal answer for the guardian but he did not appear at the hearing of the cause and he consented for the guardian to the order amending the bill. The interests of the infant defendants cannot be sacrificed thus casually and the court will see that they are protected.
The trust was created by the trustor when she was seventy-nine years of age, as a voluntary gift to the beneficiaries described in the trust agreement. With her son of mature *Page 549 
years she went to the Title Co.'s office, taking with her a form of trust agreement prepared by her lawyer and she and her son told the company's representative what she desired to do. The agreement prepared by her lawyer was not entirely acceptable in form to the Title Co. and one of its officers or employes prepared the present agreement which was read to complainant and her son. The son also read it and advised his mother it was what she wanted. After both had approved it, she executed it. The man whose name is signed as witness to her execution and who is probably the person who prepared the agreement and read it to her, is dead. The trustor and her son now say that it expresses her intention in every respect, except that she says she executed it believing that under its provisions she was to receive the income of the trust principal for life and that after her death the trust would be for the benefit of her daughter and her daughter's children, and except also that she thought she could revoke the agreement whenever she desired and get her money back.
I am satisfied that the trustor is in error in believing that the agreement should have provided for the payment of the trust income to her. She and her son say that the agreement is substantially like the one prepared by her lawyer and the trustee paid the interest received on the mortgage investment (at least semi-annually) by checks drawn to Mrs. Ewald's order, all of which checks she endorsed over to the trustor who deposited them in her bank account. The first of such checks was received no longer than six months after the execution of the trust agreement and it must have been definite notice to the trustor that she was not the life beneficiary named in the agreement, yet such checks were accepted for eight or nine years without protest from the trustor.
If the trustor believed that having made the gift she had the right not usually attached to gifts fully executed, to revoke it and take it back whenever she desired, such belief was not based on any discussion of that subject because she and her son say that revocation was not spoken of by any one at any time; therefore, the absence of a provision for revocation is not due to mutual mistake on the part of the trustor and *Page 550 
of the trustee whom the trustor constituted as custodian of the gift for the benefit of the cestuis.
A voluntary trust may be revoked at the instance of the trustor, on consent of all beneficiaries and the trustee but here we have two infants whose consents cannot be given, and since those who are to take the corpus of the trust on Mrs. Ewald's death cannot be ascertained until after that event occurs and it is determined whether at least one of her children now alive (others may be born to her) lives to the age of twenty-one, there may be persons other than the beneficiary defendants named in this suit who will be entitled to receive the corpus of the trust when the time for distribution arrives.
A trust may be annulled under special circumstances which disclose that the transaction was an inequitable one, but here the trust was wholly voluntary; the trustor was not solicited or influenced by any one to establish it; it was not created under such circumstances as to be unreasonable or improvident unless guarded by a power of revocation; although along in years, the trustor was competent to understand the terms of the agreement; she had independent advice; she did not impoverish herself; she has received from Mrs. Ewald the interest on the fund, which interest Mrs. Ewald says she will continue to pay to the trustor for Mrs. Ewald's life and she (trustor) says she has no present need of the principal of the fund. Under the circumstances of this case the trustor-complainant is not entitled to a decree revoking the trust. Isham v. Delaware, Lackawanna and WesternRailroad Co., 11 N.J. Eq. 227; Gulick v. Gulick, 39 N.J. Eq. 401; Crue v. Caldwell, 52 N.J. Law 215; Taylor v. Draper,71 N.J. Eq. 309; New Jersey Title Guarantee and Trust Co. v.Parker, 84 N.J. Eq. 351; affirmed, 85 N.J. Eq. 557.
The terms of the trust directing the mode of investment of the trust fund cannot be carried out in all particulars because according to the testimony before me, the Title Co.'s guarantee is of no value and there is at the present time no corporation in this state organized for the purpose of and authorized to guarantee mortgage loans, but the fund is now invested in the kind of mortgage specified in the trust agreement *Page 551 
and may be reinvested in a similar type of mortgage (albeit without guarantee) should occasion arise. Even if an investment of the same nature should be found impossible of procurement in the future, the trust should not be terminated and the benefit intended for the beneficiaries thereunder lost. The general control this court has over trusts should be exercised with respect to the form of investment so as to give effect to the trustor's dominant intention, which was to benefit the persons named in or designated by her trust agreement. Quick's Ex'rs v.Fisher, 9 N.J. Eq. 802; Pennington v. Metropolitan Museum ofArt, 65 N.J. Eq. 11-22; Price v. Long, 87 N.J. Eq. 578; NewJersey National Bank and Trust Co. v. Lincoln Mortgage andTitle Guaranty Co., 105 N.J. Eq. 557; Fidelity Union Trust Co.
v. J.R. Shanley Estate Co., 113 N.J. Eq. 562.
Another trustee will be appointed with authority to take over and, in its or his discretion, to continue the present security in which the corpus of the trust is invested, with further power and authority in case such security is turned into cash, to invest the proceeds from time to time in such other securities as may be designated by the statutes of this state as legal investments for executors, administrators, guardians and trustees.
It does not seem necessary that the Title Co. should file and seek the court's approval of an account of its receipts and disbursements as trustee. The only trust asset it holds is a bond and mortgage on which $9,925 of principal is due with interest paid to the last interest date, unless it also holds the sum of $75 apparently paid in reduction of the original $10,000 mortgage. It is conceded that it has paid out all interest received to which the life beneficiary of the trust is entitled. The decree herein, beside directing assignment of the bond and mortgage to a new trustee, may provide for such allowance of trustee's commissions as the Title Co. may be entitled to have. *Page 552