THE TRUST COMPANY OF NEW JERSEY, executor, &c., complainant,

*v.*

GREENWOOD CEMETERY et al., defendants.

[Decided June 11th, 1943.]

*Mr. Thomas B. Davidson,* for the complainant.

*Mr. Edwin K. Large, Jr.,* for the defendant Elizabeth R. Warden.

*Mr. Frederick M. Barnes,* for the defendants E. Stewart Arthur et al.

*Mr. William S. Rurode,* for the defendants Hazel M. D. Hodge et al.

*Mr. John J. Corcoran, Jr.,* for the defendant Greenwood Cemetery.

FIELDER, V. C.

By this suit complainant, as executor and trustee under the wills of Emma B. Savage and Mercedes L. Savage, seeks construction of the wills and instruction as to its duties thereunder.

The decedents were sisters and their wills, both dated May 20th, 1931, are identical in every particular except that in the third, fourth and seventh paragraphs of Emma's will the name of Mercedes appears, while in the same paragraphs of Mercedes' will, Emma's name appears.

The sisters were spinsters. At the date of the wills Emma was about seventy-two years old and Mercedes was about seventy-five. They had no known heirs-at-law or next of kin, save each other. Emma died October 9th, 1941, leaving Mercedes surviving and Mercedes died two days later. Their estates consist entirely of personal property. They had lived together probably always; in any event, for years prior to the execution of the wills and up to the time of Emma's death. They transacted all their business affairs together, making their investments in the same securities and their estates were nearly equal in amount. They kept a joint checking bank account, opened in 1922, from which they paid their bills and they had separate safe deposit boxes in which they kept their securities, each having the right of access to the other's box. At their deaths in each box was found an envelope containing $12,000 in bonds and on the envelope found in Emma's box was a written statement signed

by Emma, "This is the property of Mercedes" and on the envelope found in Mercedes' box was a written statement signed by Mercedes, "This is the property of Emma." The seventh paragraph of each will declares that the testatrix is the owner of only a half interest in the securities and other personal estate mentioned therein and that her sister is the owner of the other half interest. While such was not the fact, the declaration evidences how each considered her property with reference to the other, although being an owner in severalty.

The wills were prepared under the supervision of Mr. Vreeland (now dead) who had been the personal friend of the sisters and their financial adviser for years. He was named in the wills as an executor thereof. Under his direction the wills were copied from earlier wills, the only change made from the earlier wills being to name complainant as an executor and trustee under the new wills. After the wills had been typed, Mr. Vreeland called to his office the two persons who subsequently attested the execution thereof and in their presence and in the presence of the sisters he stated that the wills had been copied identical with the provisions of the earlier wills, except as to change of executor. One of the witnesses then made some explanation to the sisters of the contents of the wills and asked them if they had read the wills and immediately after they had given affirmative replies, the wills were executed by the respective testatrices in the presence of each other and the wills were left with complainant where they remained until the death of the testatrices.

The foregoing statements are based on testimony with respect to the situation of the sisters, their relations toward each other and the circumstances existing at the time the wills were executed. Such testimony is admissible for the purpose of assisting the court in determining the intention of the testatrices from the expressions used in their wills. *Leigh* v. *Savidge*, 14 N. J. Eq. 124; *Tooker* v. *Vreeland*, 92 N. J. Eq. 340; 112 Atl. Rep. 665; affirmed, 93 N. J. Eq. 224; 115 Atl. Rep. 255; *Coyle* v. *Donaldson*, 91 N. J. Eq. 138; 108 Atl. Rep. 308; *Noice* v. *Schnell*, 101 N. J. Eq. 252;

*137 Atl. Rep. 582.* From inspection of the wills and from the recited facts I think there can be no doubt that the wills were intended to be mutual or reciprocal wills, executed pursuant to agreement between the sisters in a mutual desire to effectuate a common purpose and intent as to the disposition they desired to make of their estates. Their primary concern was for each other during their joint lives and for the survivor after the death of one, so that the survivor should have the enjoyment of their combined assets during her life. Their secondary concern was that on the death of the survivor those assets should be distributed to certain agreed on beneficiaries in agreed amounts.

The first and second paragraphs of their wills provide for funeral services, burial and payment of debts and funeral expenses. Then follow paragraphs three and four, viz. (in quoting them I leave the sister's name blank):

"*Third:* If my sister ————————, shall survive myself, then I give, devise and bequeath to her all the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever, absolutely and unconditionally, and to her heirs and assigns forever."

"*Fourth:* In the event that I shall survive my sister ————————, or if she shall not survive me long enough to receive my residuary estate into her custody and control, then it is my will, and I do direct that my executor hereinafter named shall dispose of my estate as follows:"

Then follow money bequests to be paid through the executor for a total of $60,000, each bequest being to the same person in each will and for identical amounts.

The defendant Elizabeth R. Warden, who is named in each will as beneficiary of a trust fund of $5,000, contends that on Emma's death the estate given Mercedes in fee by the third paragraph of Emma's will was, by the fourth paragraph of that will, made conditional on Mercedes surviving Emma long enough to receive that estate into her custody and control; that because Mercedes survived Emma by but two days, Mercedes had not lived long enough to satisfy the requirements of said paragraph and therefore Emma's estate passed under her will to her executor for disposition according to the terms of her (Emma's) will. As a beneficiary

named in Emma's will she makes claim to a trust fund of $5,000, and she also contends that she is entitled to a like bequest as a beneficiary named in Mercedes' will. In other words, she claims to be entitled to two bequests of $5,000 each. All other defendant beneficiaries named in the two wills claim to be entitled to but one payment of the bequests in their favor. Decision on the contention raised by Mrs. Warden turns on the construction to be given to the third and fourth paragraphs of Emma's will, taking into consideration the entire will and the expressions therein used as they may be affected by the circumstances and the situation of the testatrix at the time she executed her will.

I am of the opinion that it was not the intention of either testatrix, when they executed mutual or reciprocal wills, that those to whom they proposed their estates should ultimately go, should take identical bequests under each will and the reasons for that opinion are based on the form of the wills, the relations between the sisters at and prior to the date of their wills and the strong probabilities arising from the following facts. Each testatrix left an estate approximating $54,000 which, so far as the evidence can now show, was invested in practically the same securities they owned at the time their wills were executed, out of which funeral and administration expenses and federal succession and income taxes would have to be met before distribution could be made to beneficiaries for a total of $60,000, of which total sum $5,000 is given to Greenwood Cemetery as a trust, the income to be used for the care of two cemetery plots and of the stones, monuments and markers thereon. Each will shows special concern for the interest and welfare of the defendant Matilda Arthur who is named as a beneficiary in six places in the respective wills, one bequest for her benefit being of the residue of the estate in trust for her support and education during minority and of the principal upon arriving at the age of twenty-one. It is impossible to believe that the testatrices intended that their beneficiaries should, under any circumstances, take under both wills the bequests therein stated for them, when they must have known that the result would be that each bequest would have to abate and that there

would be no residuary estate for Miss Arthur, and it would seem that they must have believed that a single bequest of $5,000 to the cemetery would be ample for the purpose intended, and the cemetery so regards it. Each will disposes of a particularly described diamond ring and of household goods and furniture. There was but one such ring and the household goods and furniture were contained and used jointly in the dwelling the testatrices occupied at the date of their wills. See *In re Kinzler's Estate, 178 N. Y. Misc. 604; 35 N. Y. Sup. (2d) 189; American Trust Co.* v. *Eckhardt (Ill.), 162 N. E. Rep. 843.*

Reverting now to the third paragraph of Emma's will wherein she gave to her sister Mercedes, in the event that Mercedes should survive her, the entire residue of her estate "absolutely and unconditionally, and to her heirs and assigns forever." The expressions used import a gift in fee made as definitely and as positively as any words known to the law could express such a gift and under that paragraph there can be no doubt that Mercedes, having survived the testatrix, became vested with the absolute ownership of the entire residue of Emma's estate to the exclusion of the beneficiaries subsequently mentioned in her will. But the defendant, Mrs. Warden, contends that by reading the fourth paragraph in connection with the third paragraph, the testatrix' intention is disclosed to be to impose a condition which operates to defeat the vesting of the unconditional estate given Mercedes. I do not agree that such construction should be given the fourth paragraph, especially when considered in connection with the circumstances and situation surrounding the testatrix at the date of her will, because the testatrix having definitely given her estate "absolutely and unconditionally" to Mercedes upon an event that happened, could not thereafter impose a valid condition by which the same estate given unconditionally, should go elsewhere. The rule is that where a testator has manifested an intent to vest an absolute fee-simple in the first taker, a subsequent limitation thereof is void as inconsistent with the rights of the first taker. *Kutschinski* v. *Sheffer, 109 N. J. Eq. 659; 153 Atl. Rep. 499,* and cases there cited; *Kimble* v. *White, 50 N. J. Eq. 28;*

*24 Atl. Rep. 400; affirmed, 51 N. J. Eq. 638; 30 Atl. Rep. 430; Parmentier v. Pennsylvania Company for Insurance, &c., 122 N. J. Eq. 25; 192 Atl. Rep. 62; affirmed, 124 N. J. Eq. 272; 1 Atl. Rep. (2d) 332; Byrne v. Byrne, 123 N. J. Eq. 6-17; 195 Atl. Rep. 848; affirmed on another point, 124 N. J. Eq. 273; 1 Atl. Rep. (2d) 464; Trafton v. Bainbridge, 125 N. J. Eq. 474; 6 Atl. Rep. (2d) 209.* The rule is applicable to bequests of personalty as well as land. *Hyde v. Hyde, 88 N. J. Eq. 358; 102 Atl. Rep. 830.*

Under the third paragraph of Emma's will her estate vested immediately on her death in Mercedes (*Kimble v. White, supra; Fidelity Union Trust Co. v. Rowland, 99 N. J. Eq. 72; 132 Atl. Rep. 673*) and having so vested, Mercedes had legal custody and control for the purpose of disposing of it by deed, assignment or will. Her custody and control was subject only to the right and duty of complainant, as Emma's executor, to administer it for the purpose of paying Emma's debts, funeral expenses, federal and state taxes and the expense of administration. Emma's desire as to the final disposition of her estate would be accomplished under Mercedes' mutual reciprocal will. In that situation what effect should be given to the phrase appearing in a subsequent paragraph of Emma's will concerning Mercedes not surviving Emma long enough to receive Emma's residuary estate into her custody and control? The words "long enough" and "custody and control" have different shades of meaning and are susceptible of several interpretations and therefore are too ambiguous and uncertain to be relied on as indicating a definite intention on Emma's part to avoid such absolute vesting in Mercedes. To "control" a thing is to have the right to exercise a directing or governing influence over it and to have "custody" of a thing does not necessarily mean actual possession or enjoyment of it, and it is to be noted that those words "custody and control" were not intended to have the meaning of actual enjoyment, because elsewhere in the will the testatrix in providing for a bequest said that if the designated beneficiary should not "live long enough after my decease to come into the enjoyment of said legacy," it should go over. It might also be noted that Mercedes had actual custody of

and physical control over that portion of Emma's estate which consisted of bonds found in Mercedes' safe deposit box in an envelope marked with Emma's name. The words "survive me long enough" are most indefinite in meaning. They may have been intended to indicate the shortest possible interval that might elapse between the deaths of the sisters, having in mind the thought that they might perish in a common disaster. If surviving Emma two days was not long enough to give Mercedes legal custody and control of Emma's estate, how long would Mercedes have had to live before it could be said that Emma's estate had come into her custody and control? The executor of Emma's estate had at least a year after Emma's death within which to administer her estate before being required to deliver physical possession of estate assets to Mercedes, had Mercedes survived that long. If Mercedes had survived Emma by eleven months, or had her death occurred the day before Emma's executor was ready to deliver that estate's securities to Mercedes, could it be convincingly argued that Mercedes never had legal control over or custody of Emma's assets? If it could be thought that paragraph four of Emma's will should be read in connection with paragraph three thereof, it is my opinion that Mercedes survived Emma long enough to have custody and control of Emma's estate within the meaning and intent of said paragraph four. *Shippee* v. *Shippee, 122 N. J. Eq. 570.*

It is my conclusion that under Emma's will her entire residuary estate passed to Mercedes to the exclusion of all beneficiaries named in the subdivisions of paragraph four thereof and that the bequests and legacies provided for in Mercedes' will are to be paid by complainant as executor of Mercedes' will, out of the combined net estates of Emma and Mercedes in accordance with what I believe to have been the intention of the two testatrices as expressed in their mutual reciprocal wills.

The sixth paragraph of each will directs the executor to retain possession of the estates and to accumulate the income until such income aggregates an amount sufficient to pay all funeral and testamentary expenses and all state and fed-

eral taxes and income taxes, and thereafter to transfer the estates as by the wills provided, the declared purpose of such direction being that the beneficiaries shall receive their bequests free and clear of all such charges. I do not think said paragraph applies to the interest which would, under the will of the sister dying first, pass to the survivor but if it does we are not particularly concerned with the paragraph as contained in Emma's will because it could be of little or no concern to Mercedes' estate, as an estate, whether charges applicable to Emma's estate were paid out of the income or out of principal of that estate. But the beneficiaries who are to take by Mercedes' will are much concerned with the operation of said provision under Mercedes' will.

It is agreed that at least ten years' income from the combined estates will be required to be accumulated before such income would be sufficient to pay such charges and if income tax rates are increased, which is not improbable, it will take much longer. When the wills were executed, it does not seem probable that the testatrices were aware that estate expenses and some taxes are chargeable against principal and (as also taxes on bequests) must be paid promptly to avoid heavy interest penalties. Nor does it seem probable that they could have realized what the total of the charges would be; or that the effect of adherence to the provision in question would long postpone their beneficiaries' enjoyment of the bequests intended for them; or that some beneficiaries might not live long enough to come into possession of their bequests (one has already died); or what its effect would be on the bequests to Greenwood Cemetery for care of cemetery plots if possession of the bequests by the cemetery could not be had within a reasonable time. All beneficiary defendants desire to waive whatever benefit might accrue to them under strict compliance with said provision and they agree that the complainant shall meet all those charges out of *corpus* and such income as has already accumulated and make distribution of the combined estates at once. The residuary legatee, however, urges that the charges should not wholly come out of the residuary estate but should be prorated among the several beneficiaries.

The intent of the testatrices was that their estates, after the death of the survivor of them, should be of benefit to those they had named in their wills and that such benefit should accrue to them as speedily as possible, but that intent will be defeated if complainant, as executor and trustee under Mercedes' will, is required to comply strictly with the provisions of paragraph six thereof. This court, as universal trustee, has power in cases of unforeseen emergency and for the protection of *cestuis,* to authorize an executor and trustee to do acts which are not strictly within the terms of a will, or to modify the terms thereof when such action is necessary to accomplish the intention and object of a testator. *Pennington* v. *Metropolitan Museum, &c., 65 N. J. Eq. 11; 55 Atl. Rep. 468; Hedges* v. *Hopper, 118 N. J. Eq. 359; 179 Atl. Rep. 261; In re North Jersey Title Insurance Co., 120 N. J. Eq. 148; 184 Atl. Rep. 420; affirmed, 120 N. J. Eq. 608; 187 Atl. Rep. 146.* Accordingly the complainant is instructed forthwith to pay all the charges mentioned in paragraph six of Mercedes' will out of *corpus* and such income as has accrued thereon, and thereafter to make distribution of the remainder of the estate in the manner directed by Mercedes' will. Unfortunately for the residuary legatee such payments must come out of residue, because it is the explicit direction of Mercedes' will that the specific bequests should be paid free of the charges and taxes aforementioned.

The final question for consideration is presented by a counter-claim filed by Greenwood Cemetery (a corporation of New York) concerning the bequests given it, to which bequests reference has been made hereinabove. The remains of the two sisters were interred in one of the cemetery plots described in their wills. The cemetery contends that the bequests to it must be considered as preferred on the ground (1) that the bequests are in the nature of funeral expenses and (2) that both bequests were given on a meritorious consideration, namely, the obligation of the cemetery to see to it that the plots and the stones, monuments and markers thereon are given proper care and attention in perpetuity. I do not think it necessary to comment on such contention (except to suggest some doubt as to its merit) because it

seems probable that the estate passing under Mercedes' will will be ample to satisfy in full all bequests to be paid thereunder. If that probability does not become a certainty, the contention made by the cemetery can then be given full consideration. The further contention raised by the counterclaim concerns the unwillingness of the cemetery to accept the bequests if the terms of Mercedes' will require it to hold and invest the amounts bequeathed in special trusts, apart from similar trust funds it holds for like purposes, but it would be willing to accept them if the amounts can, under the terms of the will, be added to the cemetery's "Perpetual Care Fund" which it has established with other funds received by it over a long period of years, for the perpetual care of plots in its cemetery. That fund, under the laws of New York, is required to be kept separate and apart from its general funds and invested only in securities authorized by the laws of that state for investment of trust funds. The wills do not direct that the bequests in question shall be held in separate or special trusts and no objection has been raised by any defendant beneficiary to payment of the bequests to the cemetery to be held by it in its "Perpetual Care Fund." I am of the opinion that the bequests can and should be so paid to and received by the cemetery and that thus the object and intent of the two testatrices as disclosed by subdivisions (a) and (b), paragraph four of their wills, will be carried out. The complainant as executor under Mercedes' will is authorized to make such payments out of the combined estates which pass under Mercedes' will.